151 P.3d 990 (2007)
Stephen SLEASMAN and Barbara Sleasman, husband and wife, Petitioners,
v.
CITY OF LACEY, a Washington municipal corporation, Respondent.
No. 77590-7.
Supreme Court of Washington, En Banc.
Argued September 12, 2006.
Decided February 8, 2007.
*991 Michael G. Gusa, Kalikow & Gusa PLLC, Olympia, WA, for Petitioners.
Joseph Michael Svoboda, Attorney at Law, Lacey, WA, William Dale Kamerrer, Law Lyman Daniel Kamerrer et al, Olympia, WA, for Respondent.
SANDERS, J.
¶ 1 We are asked to determine the meaning of "undeveloped" and "partially developed" lot as these terms were used in a Lacey ordinance. In May 2002 Stephen and Barbara Sleasman cut down trees in their backyard. City of Lacey (Lacey or city) regulates tree removal on "undeveloped" or "partially developed" property, former Lacey Municipal Code (LMC) 14.32.030(C), and fined the Sleasmans $16,861 for allegedly violating chapter 14.32 LMC. Clerk's Papers (CP) at 42-43. A reduced fine was upheld by the Court of Appeals. We reverse.
¶ 2 We hold the Lacey ordinance does not apply to the Sleasmans' property. Their property is developed because it is a lawful building site that is already suited for sale or use. It is irrelevant that the Sleasmans may further improve the property.

I
¶ 3 The Sleasmans live in a 1,967 square foot, single-family residence on a 12,632 square foot, or .29 acre, lot in Lacey. CP at 195 (citing Thurston County GeoData Center and Thurston County Assessor's Office). Soon after cutting down 18 trees, the Sleasmans were notified by Lacey they violated chapter 14.32 LMC by removing trees without a permit. The city hired Galen Wright, an arborist with Washington Forestry Consultants, Inc. Wright assessed the trees' "appraised value" at $16,861. CP at 42, 50.
¶ 4 The hearings examiner held the Sleasmans violated the ordinance but reduced the fine after exempting the five most expensive trees.[1] The city did not object. CP at 15. The Sleasmans appealed to Thurston County Superior Court. On January 30, 2004, the trial court affirmed the hearings examiner and denied the Sleasmans' equal protection claim.[2] After requesting additional briefing on the remaining claims, the trial court concluded the Sleasman property was "partially developed," and the ordinance was not unconstitutionally vague. Id. The Sleasmans appealed again. The Court of Appeals affirmed the trial court.[3]Sleasman v. City of Lacey, 128 Wash.App. 617, 619, 116 P.3d 446 (2005). The Sleasmans obtained review in our court to dispute the Court of Appeals' construction of "partially developed," its deference *992 to the city's interpretation, and to argue alternatively the ordinance is void for vagueness. Sleasman v. City of Lacey, 156 Wash.2d 1031, 134 P.3d 232 (2006). Both the Sleasmans and Lacey seek reasonable attorney fees.

II
¶ 5 The Court of Appeals held this ordinance was clear and unambiguous. We agree but find it unambiguously inapplicable.
¶ 6 Statutory construction is a question of law and our review is de novo. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001). Under Lacey's municipal code:
No person, corporation, or other legal entity shall engage in timber harvesting or cause land clearing in the city without having complied with one of the following:
A. Received a land clearing permit from the director;
B. Having obtained approval of the proposed work under the processes described in Section 14.32.050A;
C. Having received an exemption from the director under the provisions of Section 14.32.050.
LMC 14.32.040. The code defines land clearing as "direct and indirect removal of trees and/or ground cover from any undeveloped or partially developed lot, public lands or public right-of-way." Former LMC 14.32.030(C) (emphasis added). Lacey argues property is "partially developed" when additional improvements of any kind are allowed under the zoning code, asserting chapter 16.12 LMC permits the Sleasmans to build additional structures on up to 50 percent of their lot and improve 65 percent of their lot with structures, driveways, or roads. LMC 16.12.050(F), (G). The ordinance does not define undeveloped, partially developed, or developed property.
A. The Sleasman property is developed.
¶ 7 We interpret local ordinances the same as statutes. Kitsap County v. Mattress Outlet, 153 Wash.2d 506, 509, 104 P.3d 1280 (2005). An unambiguous ordinance will be applied by its plain meaning, State v. Villarreal, 97 Wash.App. 636, 641-42, 984 P.2d 1064 (1999), while only ambiguous ordinances will be construed. Food Servs. of Am. v. Royal Heights, Inc., 123 Wash.2d 779, 784-85, 871 P.2d 590 (1994).
¶ 8 The Lacey ordinance is unambiguous. Under the term's plain meaning, the Sleasman property is "developed."[4] The Court of Appeals appropriately cited Webster's Third New International Dictionary to define the plain meaning:
Webster's Third International Dictionary defines "partial" as "of, involving, or affecting a part rather than the whole." Webster's defines the term "develop" as "to convert (as raw land) into an area suitable" for "building" or "residential or business purposes." Reading these definitions together supports the City's definition  that land is partially developed where it is converted in part to commercial, residential, or some other specific purpose.
Sleasman v. City of Lacey, No. 31775-3-II, slip op. (unpublished portion) at 18 (Wash.Ct. App. July 26, 2005). The court held that because the Sleasmans cut down 18 trees, their property was "converted" in part, and therefore only "partially developed." Id.
¶ 9 But despite accurately quoting the definitions, the Court of Appeals misapplies them. According to Webster's, one "develops" property by converting raw land into an area suitable for building or residential or business purposes. The most obvious example *993 of "development" is the platting process where building lots are made ready for sale or use for future improvement. To be "partially" developed, property must either be an area where part is raw land that is unsuitable for building or where the area as a whole is not yet finally developed so it is not yet a lawful building site. Under the plain meaning, the Sleasman property is "developed" because it is a lawful building site ready for sale or use.
¶ 10 Lacey confuses "developed" with "improved." After land is developed it may then be improved. An improvement is generally understood as adding any structure to the land. See Verna v. Comm'r of Revenue Servs., 261 Conn. 102, 108-09, 801 A.2d 769 (2002) ("[W]e have little difficulty in concluding that an `improvement to real property,' as commonly understood in the law, `[g]enerally has reference to buildings, but may also include any permanent structure. . . .'" (quoting Black's Law Dictionary 757 (6th ed.1990))). Lacey asserts land is only developed when one can no longer improve it. But one cannot build on or improve upon a lot unless it is developed. The Sleasmans can add to their improvements only because their lot is developed as a lawful building site.
¶ 11 Our precedent also supports reading "developed property" to mean a lawful building site made suitable for sale or use. Hogue described land where "`people and their families or predecessors have had farms, small businesses and homes . . . in a rural atmosphere'" as "well-developed agricultural and residential lands." Hogue v. Port of Seattle, 54 Wash.2d 799, 826, 341 P.2d 171 (1959) (quoting trial court). Certainly this rural, agricultural land could be improved upon, but it was developed because no part was raw land needing further development to be made suitable for sale or improvement. Also, in B & W Construction, Inc. v. City of Lacey, 19 Wash.App. 220, 226, 577 P.2d 583 (1978), the Court of Appeals described the costs of developing land: "The price of developed lots usually includes expenses of subdivision sales and promotion, sewers, streets, utilities, and perhaps sidewalks." A developer must plat land, add sewers, streets, and utilities, etc., to convert raw land to make it suitable for final plat approval and possible improvement. In B & W Construction, the developer had not yet obtained a final plat of the land so it was then not yet suitable for building: "Although the comparable property had been engineered and platted on paper, no further steps had been taken to develop it, i.e., no utilities or roads had been laid and no lots had been staked out." Id. Hence that land was only partially developed.[5]
B. Lacey's and the Court of Appeals' reading contradicts the plain meaning of "partially developed."
¶ 12 Lacey and the Court of Appeals both read "partially developed" so broadly it includes nearly every piece of property. Every house would be at most "partially developed" if it could be added to, altered, or if the owner is allowed to change the property's use  such as to a day care. Sleasman, No. 31775-3-II, slip op. (unpublished portion) at 20 n. 18. Because some change can always be made to improvements on property or its use, all lots under this broad reading are only "partially developed."
¶ 13 But this reading belies the plain meaning of the terms. If the city council intended the ordinance to reach all property, *994 it could have simply required a permit for undeveloped or developed land.[6] Full effect must be given to the legislature's language, with no part rendered meaningless or superfluous. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996). By limiting the ordinance to partially developed land, the city council obviously intended to exclude "developed property."
C. The city's interpretation is not entitled to deference.
¶ 14 Although the Court of Appeals held the ordinance was plain on its face, it nonetheless gave deference to the city's construction. Ordinances with plain meanings are not subject to construction. Only ambiguous ordinances may be construed. City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). However, even if the ordinance were ambiguous, Lacey's interpretation would not be entitled to deference. Lacey's claimed definition was not part of a pattern of past enforcement, but a by-product of current litigation. Often when an agency or executive body is charged with an ordinance's administration and enforcement, it will interpret ambiguous language within that ordinance. But the agency must show it adopted its interpretation as a "matter of agency policy." Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 815, 828 P.2d 549 (1992). While the construction does not have to be memorialized as a formal rule, it cannot merely "bootstrap a legal argument into the place of agency interpretation," but must prove an established practice of enforcement. Id.
¶ 15 Lacey bears the burden to show its interpretation was a matter of preexisting policy. Id. It tries to meet this burden by showing it applied the ordinance to the Sleasmans' neighbors, Nathan and Stacey Magee, who had a similar improvement on a similarly sized lot. CP at 90. The Magees were fined $15,966 on August 8, 2002 for cutting down 25 trees.[7] CP at 87. But this was after the Sleasmans cut down their trees in May 2002. The tree removal ordinance was originally passed in 1975; Lacey needs more than two nearly simultaneous examples of its application to single-family residences to demonstrate this was city policy because a nonexistent enforcement policy cannot provide notice to the Sleasmans. Moreover, the city testified the ordinance was originally designed for large-scale development (as Sleasmans claim) and did not proffer its current construction until the trial court asked for further briefing. These facts are similar to Cowiche Canyon where this court refused to credit an agency interpretation where it was applied only "one or two instances in 14 years." Cowiche, 118 Wash.2d at 815, 828 P.2d 549. Here Lacey applied this interpretation to only one or two instances in 30 years, and the Sleasmans were the first.

III
¶ 16 The Sleasmans also argue former LMC 14.32.030(C) is unconstitutionally vague. Constitutional challenges are also reviewed de novo. Willoughby v. Dep't of Labor & Indus., 147 Wash.2d 725, 731, 57 P.3d 611 (2002). When possible, this court resolves disputes without reaching constitutional arguments. By holding the Sleasman property is developed and the ordinance does not apply, we need not reach the question of whether former LMC 14.32.030(C) is unconstitutionally vague.

IV
¶ 17 Both parties claim they are entitled to attorney fees. The Sleasmans claim attorney fees pursuant to 42 U.S.C. § 1988 for violation of their due process rights if the ordinance is unconstitutionally vague.[8] But by *995 its plain meaning, the Sleasmans' property is not "partially developed." Therefore, there is no deprivation of a constitutional right, and the Sleasmans are not entitled to attorney fees under this statute.
¶ 18 Lacey claims attorney fees under RCW 4.84.370 as a prevailing party.[9] But it isn't.
¶ 19 We reverse the Court of Appeals and award costs to the petitioners.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justices CHARLES W. JOHNSON, BARBARA A. MADSEN, BOBBE J. BRIDGE, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and JAMES M. JOHNSON.
NOTES
[1] After exemptions and deducting the Sleasmans' revegetation plan, the final fine was $625, plus the city charged a forester's fee of $546 for a total of $1,171. Sleasman v. City of Lacey, No. 31775-3-II, slip op. (unpublished portion) at 10 (Wash.Ct.App. July 26, 2005).
[2] A third hearing was held in front of a different trial judge concerning a procedural matter unrelated to this appeal. The superior court found the Sleasmans' petition did not have to be dismissed because they failed to set an initial hearing date within seven days of their petition as required by RCW 36.70C.040(2). Verbatim Report Proceedings (Aug. 1, 2003) at 19. The Court of Appeals, in the published portion of its opinion, affirmed the superior court ruling. Sleasman v. City of Lacey, 128 Wash.App. 617, 619, 116 P.3d 446 (2005). The city did not appeal.
[3] The Court of Appeals denied the Sleasmans' equal protection and vagueness claims. The Sleasmans did not seek review on equal protection grounds but do seek review on vagueness.
[4] If former LMC 14.32.030(C) was ambiguous, then it must be construed in favor of the Sleasmans because land-use ordinances must be strictly construed in favor of the landowner. As we held in Morin v. Johnson, 49 Wash.2d 275, 279, 300 P.2d 569 (1956):

It must also be remembered that zoning ordinances are in derogation of the common-law right of an owner to use private property so as to realize its highest utility. Such ordinances must be strictly construed in favor of property owners and should not be extended by implication to cases not clearly within their scope and purpose.
See Mall, Inc. v. City of Seattle, 108 Wash.2d 369, 385, 739 P.2d 668 (1987) (noting to apply Morin when the ordinance is ambiguous).
[5] Other state courts also define "developed" as converting raw land to an area suitable for sale or use as a building site. See Kenai Peninsula Borough v. Cook Inlet Region, 807 P.2d 487, 497 (Alaska 1991) ("Cases dealing with the term `developed' in the context of land confirm that `develop' connotes conversion into an area suitable for use or sale."). Kenai Peninsula cites the following cases to support its holding:

Winkelman v. City of Tiburon, 32 Cal.App.3d 834, 108 Cal.Rptr. 415, 421 (1973) ("The term `developed' connotes the act of converting a tract of land into an area suitable for residential or business uses."); Muirhead v. Pilot Properties, Inc., 258 So.2d 232, 233 (Miss.1972) (same holding); Prince George's County v. Equitable Trust Co., 44 Md.App. 272, 408 A.2d 737, 742 (1979) ("Develop [is defined as] the conversion of raw land into an area suitable for residential or business uses."); Best Building Co. v. Sikes, 394 S.W.2d 57, 63 (Tex.Civ. App.1965) (court approved trial court finding based in part on extrinsic evidence that "developed" included subdividing, building streets, and installing utilities).
Id. (alteration in original) (citation omitted).
[6] On July 26, 2006, the city council passed Ordinance 1269, which changed the language to now read "undeveloped, partially developed, or developed lot, public lands or public right-of-way." LMC 14.32.030(J).
[7] After exempting the five most expensive trees and considering the Magees' revegetation plan, the city agreed to waive the remaining balance of $1,488. CP at 90.
[8] 42 U.S.C. § 1988(b) provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . .
[9] RCW 4.84.370(1) provides:

Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. . . .