186 P.3d 357 (2008)
MILESTONE HOMES, INC., a Washington limited liability corporation, Respondent,
v.
CITY OF BONNEY LAKE, a municipal corporation, Appellant, and
Ronald and Pam Newman, a marital community; George Hollenbeck, a single person; Douglas McCoy, a single person; Andrew and Kate Gallagher, a marital community; Robert Cline, a single person; Daniel and Angela Anacker, a marital community; Michael Johnson, a single person; Patrick Gerkey, a single person; Russel and Catherine Meeker, a marital community; Patrick and Catherine Barrett, a marital community; Jason and Sara Catle, a marital community, Property Owners.
No. 36441-7-II.
Court of Appeals of Washington, Division 2.
June 17, 2008.
*358 Kathleen J. Haggard, Jeffrey Ganson, Dionne & Rorick, Seattle, WA, for Appellant.
William Theodore Lynn, Margaret Yvonne Archer, Attorneys at Law, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 The City of Bonney Lake appeals the superior court's decision reversing the Bonney Lake city council's denial of a preliminary plat proposed by Milestone Homes, Inc. To meet code density requirements as to number of lots per acre, Milestone included in its plat proposal five neighboring and previously platted and developed lots. Bonney Lake contends that the city council properly interpreted the municipal code in rejecting Milestone's plat application and that the superior court erred in reversing that decision and in supplementing the record with three documents that the city council did not consider. We agree that the superior court erred in reversing the city council, and we need not consider whether the superior court erred in supplementing the record because the supplemental documents are not material to our decision. We reverse the superior court and uphold the city council's denial of Milestone's preliminary plat application.

FACTS
¶ 2 Milestone Homes, Inc., filed a preliminary plat application with the City of Bonney Lake for a project known as Orchard Grove II. Milestone proposed a 25-lot subdivision on 5.65 acres. The 5.65 acres consisted of 4.03 acres owned by Milestone that would be divided into 20 new lots, as well as five previously developed lots owned by third parties that are within a neighboring subdivision known as Enchanted Estates II. The property in the proposed plat is zoned low-density residential (R-1), which permits 4-5 dwelling units per net acre of land. Bonney Lake Municipal Code (BLMC) § 18.14.010. With the lots from Enchanted Estates, the plat had a density of 4.95 lots per acre. Without those lots, the density was 5.8 lots per acre.
¶ 3 Milestone's plat application included signed, notarized statements from the five Enchanted Estates lot owners consenting to including their lots in the Orchard Grove II plat.[1] A staff report noted that no change would be made to the existing parcel lines of these five lots and that the owners would not take part in the Orchard Grove II homeowner's association. During the public hearing on the preliminary plat application, the *359 city planner testified that the planning staff initially was uncertain how to proceed with Milestone's application, including the Enchanted Estates lots, but "[i]n the end, . . . we've decided there wasn't anything in our, in our code that prevented them including these lots in their density population." Hearing Examiner Transcript, at 12.
¶ 4 During the same hearing, Milestone acknowledged that it was adding the five lots in the tract from another plat to meet Bonney Lake's density requirements. The hearing examiner recommended that the city council approve the preliminary plat and made the following finding regarding the density requirement:
The site is located within the Low Density Residential designation of the Bonney Lake Comprehensive Plan which encourages residential development to take place in an orderly and cost efficient manner to best utilize available land and reduce sprawl. The applicant's unique proposal to increase density within an Urban Growth Area by adding five lots and an open space tract from an adjoining subdivision, satisfies said goal.
Clerk's Papers (CP) at 69.
¶ 5 At a subsequent meeting, the city council considered a resolution from its legal department that recommended revising Milestone's application, and the city council rejected the hearing examiner's recommendation. Before reaching its decision, the city council asked the planning staff and the city attorney questions about the Orchard Grove project. The comments below reflect some of the city council's concerns:

Council Member Jim Rackley: Mr. Leedy, is there fancy footwork going on here with the lot sizes?

Former Planning Director Bob Leedy: [A]ll indicators are that there's something creative being attempted. And we had mixed response when staff initially inquired as to what was going on. The bottom line being that other jurisdictions, some other jurisdictions apparently honor this kind of thing, we question whether it should be honored or not.
. . . .

Deputy Mayor Dan Swatman: Because truly I think our code was developed around, you take a piece of land and you X it out and you own it and you're going to subdivide the whole thing[.]

Mr. Leedy: Exactly.

Deputy Mayor Swatman: [N]ot draw this huge thing around the whole City and say I'm going to do this little corner and calculate it out so the rest of this averages out so I can do this little corner[.]

Mr. Leedy: You're right.

Council Member Dave King: Let me ask a question. Somewhere in another plat sometime in the future adjacent to these properties could another developer approach the owner of these particular properties that have already been included in this equation and say[,] "hey, can we get your permission to use your lots to help increase our density computation for our tract?" [W]hat record would there be other than the memory of someone who attended such a meeting and approved this plat, that such a thing had taken place?

Mr. Leedy: Staff had asked that same question[,] Mr. King.

Deputy Mayor Swatman: That's not the intent of our code.

Council Member King: A person living in the right place could have a pretty lucrative business selling the notion of the amount [of] property that he sits on is includable in several different plats.
CP at 41, 45.
¶ 6 The city council denied the plat, finding and concluding:
RESOLUTION NO. 1650
1. The proposed subdivision named Orchard Grove II is within an R-1 zone. The development density limits in R-1 zoning are: "four to five dwelling units (rounded down) per net acre." BLMC 18.14.060.
2. "Subdivision" means a division of land into 10 or more lots or other divisions of land for the purpose of development or of transfer. BLMC 17.08.020(T).
3. The proposed subdivision is proposed to create 20 new lots.

*360 4. Only a portion of the Orchard Grove II plat is proposed to be subdivided and developed.
5. Lots 21 through 25 have already been platted and are currently part of a different subdivision, the Enchanted Estates Phase 2 subdivision.
6. Lots 21 through 25 are not proposed to be subdivided for the purpose of development or transfer as part of the proposed Orchard Grove II subdivision. Their inclusion within the Orchard Grove II plat appears to be for the sole purpose of artificially increasing allowed densities upon the portions of the plat actually being subdivided. The applicant has no possessory interest in such lots or any legal authority to limit future development activity on such lots.
7. The portion of Orchard Grove Plat II excluding lots 21-25 is proposed to be subdivided to provide 5.8 dwelling units per acre for the purposes of development or transfer.
8. By including the land acreage of lots 21 through 25, the applicant proposes to add the acreage of such lots to the density computations for the remainder of the plat, thereby proposing development of the plat at a higher density than is allowed by the BLMC for lots in an R-1 zone.
9. The City Council finds that the proposed subdivision does not comply with the BLMC since it includes lots external to the proposed subdivision lot, and those external lots are not proposed to be subdivided.
10. The City Council finds that the proposed subdivision does not comply with R-1 zoning density restrictions if lots 21-25 are not considered.
11. NOW THEREFORE THE CITY of Bonney Lake concludes that the proposed preliminary plat is denied; provided, that the applicant shall have thirty (30) days from the date hereof in which to submit a revised application in conformance with the Bonney Lake Municipal Code and this decision.
CP at 14-15.
¶ 7 Milestone then submitted a reconfigured plat that included only 18 new lots within the Orchard Grove plat, excluded the Enchanted Estates lots, and had a density of 5 units per acre. The city council approved the revised plat application. Despite that approval, Milestone filed an appeal under the Land Use Petition Act (LUPA), ch. 36.70C RCW, as well as an action for damages under chapter 64.04 RCW. The parties agreed to stay the damages action until the LUPA appeal is resolved.
¶ 8 Milestone moved to supplement the record with three documents that neither the hearing examiner nor the city council considered. These documents showed that Milestone made early inquiries about including the Enchanted Estates lots in the Orchard Grove plat and was told by the prior city planner that it could do so. Two letters from Milestone representatives complained about the new planner's change in position, and a memorandum from planning director Leedy to the planning staff explained that Milestone's plat should be allowed in light of the previous assurances. These documents were written before the hearing examiner made his decision, but they were not brought to his attention during the hearing on the plat application.
¶ 9 The superior court granted Milestone's motion to supplement the record and reversed the city council's decision denying Milestone's preliminary plat application. It concluded that there was ambiguity in the Bonney Lake ordinances, that such ambiguity should allow property owners to "do what they want with their property," and that the solution was for Bonney Lake to "[w]rite a better ordinance that anticipates this." Report of Proceedings (RP) (May 25, 2007) at 5. Bonney Lake appeals.

ANALYSIS
A. The Preliminary Plat Application Process
¶ 10 Under the Bonney Lake Municipal Code, the applicant files a preliminary plat application and the director of planning and community development determines whether it is complete. BLMC §§ 14.80.020, .030. The plat application then goes to the hearing examiner, who conducts a public hearing, *361 makes factual findings, and submits a recommendation to the city council. BLMC §§ 14.80.040-.080; see RCW 58.17.070 (preliminary plat of proposed subdivision shall be submitted for approval to legislative body of city in which plat is situated). The city council considers the plat in an open and public meeting and may revise or reject the hearing examiner's findings and approve or deny the plat. BLMC § 14.80.090; see RCW 58.17.100 (city legislative body shall consider the recommendations of the hearing body at a public meeting and may adopt or reject the recommendations of such hearing body based on the record established at the public hearing). In considering a proposed subdivision, the city council must determine whether it will serve the public interest. RCW 58.17.110(1). A party may seek review of the city council's decision in the superior court. BLMC § 14.120.050; RCW 36.70C.040(1).
B. The Standard of Review
¶ 11 LUPA is the exclusive means for judicial review of land use decisions with a few exceptions. RCW 36.70C.030; Twin Bridge Marine Park, LLC v. Dep't of Ecology, 162 Wash.2d 825, 854, 175 P.3d 1050 (2008). Under LUPA, we review the land use decision on the basis of the administrative record, not the superior court's record or decision. Pavlina v. City of Vancouver, 122 Wash.App. 520, 525, 94 P.3d 366 (2004). A court may grant relief only if the party seeking relief establishes one of the standards of RCW 36.70C.130(1), which include:
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
. . . .
(d) The land use decision is a clearly erroneous application of the law to the facts.
RCW 36.70C.130(1).
¶ 12 Milestone argued to the superior court that the city council erroneously interpreted the law and erroneously applied the law to the facts.[2] RCW 36.70C.130(1)(b) and (d). Subsection (b) presents a question of law that we review de novo. See Pinecrest Homeowners Ass'n v. Cloninger & Assoc., 151 Wash.2d 279, 290, 87 P.3d 1176 (2004) (judicial review of any claimed error of law in city council's interpretation of city ordinances is de novo and must accord deference to council's expertise). Milestone can satisfy subsection (d) if we are left with a definite and firm conviction that the city council made a mistake. See Cingular Wireless, LLC v. Thurston County, 131 Wash.App. 756, 768, 129 P.3d 300 (2006). In making such an assessment, we defer to factual determinations of the highest forum below that exercised fact-finding authority. Cingular Wireless, 131 Wash.App. at 768, 129 P.3d 300.
¶ 13 Courts interpret local ordinances the same as statutes. Sleasman v. City of Lacey, 159 Wash.2d 639, 643, 151 P.3d 990 (2007). We apply an unambiguous ordinance according to its plain meaning; we construe only ambiguous ordinances. Sleasman, 159 Wash.2d at 643, 151 P.3d 990. Our goal in construing zoning ordinances is to determine legislative purpose and intent. 8 E. McQuillin, The Law of Municipal Corporations, § 25.71 at 224 (3d ed.2000); HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 472, 61 P.3d 1141 (2003).
The court should be guided by the reasonable expectation and purpose, as expressed in the ordinance or fairly to be inferred therefrom, of the ordinary person who sits in the municipal legislative body and enacts law for the welfare of the general public.
8 Law of Municipal Corporations, § 25.71 at 224.
¶ 14 In Sleasman, the Supreme Court determined that the ordinance at issue was unambiguous. Sleasman, 159 Wash.2d at 643, 151 P.3d 990. The court stated in a footnote, however, that if the ordinance was ambiguous, it had to be interpreted in favor of the property owner "because land-use ordinances must be strictly construed in favor of the landowner." Sleasman, 159 Wash.2d *362 at 643 n. 4, 151 P.3d 990. As support, the court cited the following language from Morin v. Johnson, 49 Wash.2d 275, 279, 300 P.2d 569 (1956):
It must also be remembered that zoning ordinances are in derogation of the common-law right of an owner to use private property so as to realize its highest utility. Such ordinances must be strictly construed in favor of property owners and should not be extended by implication to cases not clearly within their scope and purpose.
Sleasman, 159 Wash.2d at 643 n. 4, 151 P.3d 990.
¶ 15 The superior court relied on this language from Sleasman in reversing the city council's decision here. As Bonney Lake notes, however, this language was dictum in Sleasman given its finding of an unambiguous ordinance. Moreover, Sleasman ignored a previous statement from Morin that the court cited with approval in Development Services v. City of Seattle, 138 Wash.2d 107, 117, 979 P.2d 387 (1999) (emphasis omitted): "[I]n any doubtful case, the court should give great weight to the contemporaneous construction of an ordinance by the officials charged with its enforcement." Morin, 49 Wash.2d at 279, 300 P.2d 569. As the Development Services court explained, "[T]he law does not require strict construction in favor of the landowner. So long as the proposed use is within the scope of the ordinance, a zoning ordinance is construed to effectuate its plain purpose and intent." Dev. Servs., 138 Wash.2d at 117, 979 P.2d 387; see also Pinecrest Homeowners Ass'n, 151 Wash.2d at 290, 87 P.3d 1176 (Supreme Court's review of city ordinances must accord deference to city council's expertise); Citizens to Preserve Pioneer Park, LLC v. City of Mercer Island, 106 Wash.App. 461, 475, 24 P.3d 1079 (2001) (courts generally accord deference to an agency's interpretation of an ambiguous ordinance). LUPA expressly incorporates this deferential standard. See RCW 36.70C.130(1)(b) (party seeking relief must show that land use decision is erroneous interpretation of the law, "after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise").
C. The City Council's Decision
¶ 16 In concluding that Milestone's proposed plat did not meet density standards, the city council relied on the density requirements set forth in the Bonney Lake Municipal Code and the definition of a subdivision in the Code; finding specifically that Milestone did not own or possess the external lots, that it did not propose to transfer or develop them, and that without the external lots, Milestone's proposed plat exceeded the City's density standards.
¶ 17 The Bonney Lake Municipal Code defines a "subdivision" as "a division of land into 10 or more lots or other divisions of land for the purpose of development or of transfer." BLMC § 17.08.020(T). The R-1 District is intended "to protect single-family residential neighborhoods from incompatible land uses and create new compatible housing at a density of [4-5] units per net acre." BLMC § 18.14.010. Consequently, the required density at the conclusion of any subdivision in such a district is 4-5 dwelling units per net acre. BLMC § 18.14.060(A). The Code does not allow a variance from the maximum residential density pertaining to zoning districts. BLMC § 14.110.010(A)(3).
¶ 18 As Milestone points out, the Code does not require an applicant for a land use permit to have a possessory interest in the property at issue, as it states only that "applications shall be signed by the property owner or an authorized representative." BLMC § 14.90.010. Consequently, the Code affords no basis for the city council's objection to Milestone's lack of any possessory interest in the five Enchanted Estates lots. The city council's principal objection, however, to Milestone's preliminary platthat it circumvented the R-1 density requirements by adding lots that were proposed to be neither developed nor transferredwithstands scrutiny. The Code's density requirements are inflexible and unambiguous, and its definition of a subdivision is equally clear. See also RCW 58.17.020(1) ("`Subdivision' is the division or redivision of land into five or more lots . . . for the purpose of sale, lease, or transfer of ownership"); 8 Law of Municipal Corporations, § 25.118.10 at 365 (3d ed.2000) (subdivision is division of parcel of *363 land into smaller lots so that lots may be sold or developed individually).
¶ 19 Without identifying a particular ordinance, however, the superior court found ambiguity in the Code that permitted Milestone's preliminary plat application. The court found, in essence, that because Milestone's approach was not expressly anticipated and rejected in the Code, it had to be permitted. Milestone reiterates this argument here and contends that without an established pattern of enforcement showing that similar plat applications have been rejected, the city council's interpretation of its municipal code is not entitled to deference under LUPA.
¶ 20 As support, Milestone cites Sleasman, which states that to support its interpretation of an ambiguous ordinance, an executive body must show an adoption of its interpretation as a matter of agency policy. Sleasman, 159 Wash.2d at 646, 151 P.3d 990 (citing Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 815, 828 P.2d 549 (1992)). In other words, the city council must show a pattern of enforcement. Sleasman, 159 Wash.2d at 646, 151 P.3d 990. In Sleasman, the court found no such pattern where the City applied the ordinance at issue to single-family residences for the first time in the case at bar. Sleasman, 159 Wash.2d at 647, 151 P.3d 990. Similarly, there was no pattern of enforcement in Cowiche Canyon where the evidence showed that development similar to that under scrutiny had occurred previously without regulation. Cowiche Canyon, 118 Wash.2d at 814-15, 828 P.2d 549.
¶ 21 Here, there is no evidence that a developer has ever tried to include parts of a previous subdivision in a plat for a new subdivision to satisfy the density requirements for the new development. Bonney Lake argues persuasively that it cannot show a pattern of enforcement because no developer has ever submitted a similar plat application that includes already platted and developed lots.
¶ 22 But we are not bound by Sleasman's discussion of ambiguous ordinances because we find that the zoning ordinances here clearly and unambiguously set forth specific density requirements and define "subdivision" in a manner that excludes Milestone's preliminary plat application. Moreover, if the zoning ordinances were ambiguous, we would defer to the city council's interpretation of the Code. Milestone's plan would frustrate the Code's goal of preserving single-family neighborhoods with large lots. And in construing ambiguous zoning ordinances, we are guided by the reasonable expectation and purpose of the ordinary person who enacts law for the welfare of the general public. Those who enacted the Bonney Lake Municipal Code did not reasonably expect that new subdivisions in an R-1 district would include lots from an adjacent and preexisting plat so that maximum density requirements could be circumvented.[3] We reverse the superior court and uphold the city council's denial of Milestone's preliminary plat application.
We concur: BRIDGEWATER, J., and VAN DEREN, A.C.J.
NOTES
[1] To secure one of those statements, Milestone agreed to purchase an undeveloped tract of land in the Enchanted Estates plat and grant one of the five Enchanted Estates lot owners partial ownership of it.
[2] Milestone also alleged that the city council engaged in unlawful procedure by soliciting comments from its staff during the hearing on the matter, but it dropped this argument when the superior court agreed to supplement the record. See RCW 36.70C.130(1)(a).
[3] This conclusion is unaffected by the documents Bonney Lake now seeks to strike from the record. Consequently, we need not determine whether the trial court erred in supplementing the record. The error, if any, was harmless.