IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VERN THOMPSON, | ) | No. 30996-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KITTITAS COUNTY, | ) | |
| | ) | |
| Respondent. | ) | |

KULIK, J. — Vern Thompson stores 27 vehicles on his property near Cle Elum. The vehicles could not be started without additional components, most commonly, a battery. Kittitas County (County) determined that the collection of inoperable vehicles on Mr. Thompson's property was a public nuisance and issued a notice of violation and abatement. The notice of violation and abatement was affirmed by a hearing examiner and superior court. On appeal, Mr. Thompson contends that the hearing examiner's order should be reversed because the County misinterpreted its ordinances that address inoperable vehicles. He contends that an inoperable vehicle does not include a vehicle that is reasonably capable of being operable with minimal assistance. Mr. Thompson also contends that the ordinances are unconstitutionally vague, that he possesses a valid

nonconforming use of the property, and that the hearing examiner violated his procedural due process rights.

Mr. Thompson's vehicles would not start when the compliance officer checked them. We are not persuaded by Mr. Thompson's arguments. Therefore, we affirm the decision of the hearing examiner and the trial court.

## FACTS

In November 2008, Kittitas County Code Enforcement Officer Lisa Iammarino visited the property belonging to Mr. Thompson after receiving a complaint regarding multiple junk vehicles at his address. Officer Iammarino found multiple vehicles, both operable and inoperable, in various states of repair. Mr. Thompson was made aware of the issue and the violations. For the next few years, Officer Iammarino continued to visit the property and continued to notify Mr. Thompson of the violations.

In January 2011, Officer Iammarino issued Mr. Thompson a notice of violation and abatement. The notice of violation and abatement informed Mr. Thompson that the multiple unlicensed and/or inoperable vehicles on the property were junk as defined by Kittitas County Code (KCC) 17.08.329 and the collection constituted a junkyard as defined by KCC 17.08.330. Mr. Thompson was cited for having a junkyard in an AG-3 zone, a use not approved or permitted by former KCC 17.28A.020 (2007). The notice

2

also cited Mr. Thompson for violating section 302.8 of the International Property Maintenance Code (IPMC)[1] for motor vehicles. The IPMC provided that no inoperative or unlicensed motor vehicles shall be parked, kept, or stored on any premises. Mr. Thompson was ordered to remove all junk and all unlicensed and inoperable vehicles from the property. He was also fined $500.

Mr. Thompson appealed the violation to the hearing examiner. At the appeal hearing, the County presented the declaration of Officer Iammarino. In the declaration, Officer Iammarino described her 10 site visits from 2008 to 2011 and included photographic evidence of the property. Officer Iammarino stated that she determined the junk vehicles placed on the property constituted a public nuisance pursuant to KCC 18.01.010 because the property violated Title 17 of the KCC and the IPMC as adopted by Title 14 of the KCC.

Attached to the declaration was an inventory of the vehicles taken at a 2009 site visit by Officer Iammarino. The inventory included a picture of each vehicle, a description of the vehicle's condition, and the license expiration date. The 2009 site visit found approximately 37 vehicles on the property. Of those vehicles, 27 were licensed but could not be started without additional components, mainly a battery. Ten of the vehicles

---

[1] 2009 edition *available at* http://www.ci.ojai.ca.us/vertical/sites/%7B6CAA84A0-

3

were licensed with engines that were capable of being started. The inventory noted that none of the vehicles were observed in driving mode and additional vehicle components, such as brakes, gears, and turn signals were not inspected during the inventory. Five to six cars had expired licenses, and eight trucks were listed as farm exempt from licensing. Numerous photographs taken after the 2009 visit showed the same vehicles on the property.

Mr. Thompson offered his testimony to refute Officer Iammarino's declaration. Mr. Thompson contended that his property was not a junkyard but instead a collection of cars that he restores as a hobby. Mr. Thompson claimed that he obtained a license to restore cars in 1981. He stated he does minor work on the cars, but does not strip cars or change the engines.

He also contended that he bought 15 batteries for the vehicles and that all the vehicles run. Mr. Thompson said that 7 to 8 vehicles have been removed since November 2008 and some newer vehicles have been added. Mr. Thompson also said that most of the vehicles were licensed, including 8 trucks registered as farm exempt and used to store animal feed. Mr. Thompson said that the farm exempt vehicles were operable if he wanted them to be.

---

9B68-4637-964F-ED4B5D8E7542%7D/uploads/International_Property_Maintenance_Code.pdf.

Two persons appeared for Mr. Thompson and testified that they considered him a car collector. Neither party called Officer Iammarino to testify at the hearing.

The hearing examiner issued findings of fact and conclusions of law affirming the violation. In reaching its decision, first, the hearing examiner found there was more than one inoperable vehicle on the property and that based on the storage and collection of inoperable and unlicensed vehicles, Mr. Thompson's property was a junkyard as defined by KCC 17.08.330. The hearing examiner found that Mr. Thompson's claimed status as a hobby collector does not make his property immune from being declared a junkyard because of the course of time that the unlicensed and inoperable vehicles were on the property. The hearing examiner also found that none of the vehicles stored and collected qualified as farm exempt under the statutory definition.

Second, the hearing examiner found that Mr. Thompson's property is in an AG-3 zone and the existence of a junkyard in this zone is prohibited. The hearing examiner concluded that a junkyard in an AG-3 zone was a violation of Title 17 of the KCC, and is a nuisance as defined by Title 18 of the KCC.

Third, the hearing examiner found that over the course of Officer Iammarino's investigation, the property contained multiple inoperable vehicles kept or stored in various states of repair. The photographic evidence of Officer Iammarino demonstrated a

5

violation of section 302.8 of the IPMC, which was adopted by Kittitas County pursuant to KCC 14.04.010(7). Accordingly, the hearing examiner concluded that the multiple vehicles both operable and inoperable out in the open in an AG-3 zone is a violation of the IPMC, Title 14 of the KCC, and is a nuisance as defined by Title 18 of the KCC.

Finally, the hearing examiner ordered Mr. Thompson to remove from the property any inoperable or unlicensed vehicles and any other items that are not stored in a clean, safe, secure, and sanitary manner. At a minimum, this removal included the vehicles identified in the 2009 inventory. The hearing examiner also ordered Mr. Thompson to demonstrate to Officer Iammarino that any remaining vehicles on the property are operable and have current registration and license tags. Last, the court ordered Mr. Thompson to pay the $500 penalty assessed in the violation.

Mr. Thompson appealed the decision to Kittitas County Superior Court. The superior court affirmed the hearing examiner's decision. The court specifically found that the property was a nuisance because (1) the property met the definition of a junkyard, which is not allowed in the AG-3 zone, and (2) the property violated the IPMC. The court also found that the vehicles did not meet the statutory definition of farm exempt because they are used as storage rather than transport. Any licensing ability to move them on public roads is irrelevant to the requirements for their storage.

6

In his argument before the superior court, Mr. Thompson claimed that his car collection was a preexisting nonconforming use of the property. However, the court was not persuaded that Mr. Thompson engaged in this use of his property prior to the County adopting the regulations involved in the violation. In any case, the court explained that preexisting use could not be grandfathered in because the property use violated regulations that were enacted to promote public health, safety, and welfare.

The superior court found that the hearing examiner did not commit any errors of law and that the decision was supported by substantial evidence. The superior court order incorporated the findings of the hearing examiner and imposed the same conditions on Mr. Thompson.

Mr. Thompson now appeals the decision of the superior court. He contends that the superior court erred in affirming the hearing examiner's order because the hearing examiner wrongly interpreted the KCC definitions for junk vehicles and junkyard. He also contends that his property was a preexisting nonconforming use and that the hearing examiner violated his due process rights by not allowing him to cross-examine the County's code enforcement officer.

No. 30996-7-III
*Thompson v. Kittitas County*

ANALYSIS

*Inoperable Vehicles.* Statutory construction is a question of law that receives de novo review on appeal. *Sleasman v. City of Lacey*, 159 Wn.2d 639, 642, 151 P.3d 990 (2007). Findings of fact are reviewed under the substantial evidence standard and conclusions of law de novo. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 99 Wn. App. 127, 133, 990 P.2d 429 (1999), *aff'd*, 146 Wn.2d 740, 49 P.3d 867 (2002). Substantial evidence exists when the evidence in the record is of sufficient quantity to persuade a fair-minded, rational person of the truth of the finding. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 34, 891 P.2d 29 (1995) (quoting *State v. Maxfield*, 125 Wn.2d 378, 385, 886 P.2d 123 (1994)). Under the substantial evidence standard, the reviewing court will not substitute its judgment for that of the trier of fact. *Id.* Instead, the reviewing court accepts the fact finder's views regarding the credibility of witnesses and the weight accorded to reasonable but competing inferences. *Id.* (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

Mr. Thompson contends that the hearing examiner erred in affirming the violation because the examiner incorrectly interpreted the terms "inoperable" and "inoperative" as found in the KCC.

8

Local ordinances are interpreted the same as statutes. *Sleasman*, 159 Wn.2d at 643. An ordinance that is unambiguous will be given its plain meaning; there is no need to analyze its statutory construction. *Id.* Only ambiguous ordinances will be construed. *Id.*

KCC 18.01.010(1) declares a public nuisance for violations of Kittitas County ordinances and codes related to building, zoning, and environmental health and safety, including Title 14 KCC and Title 17 KCC. The hearing examiner declared Mr. Thompson's property a public nuisance and in violation of former KCC 17.28A.020 and IPMC 302.8 as adopted by KCC 14.04.010(7).[2]

Former KCC 17.28A.020 lists the permitted uses in an AG-3 zone, which is the zoning classification for Mr. Thompson's property. A junkyard is not on the list of permitted uses for the zone. Former KCC 17.28A.020. A "junkyard" is defined in the zoning title as "any lot, parcel, building, structure or portion thereof, used for the storage, collection, processing, purchase, sale, exchange, salvage or disposal of scrap materials, unlicensed or inoperable vehicles . . . . This shall not be interpreted to include the normal

---

[2] Mr. Thompson contends that his vehicle collection is not a nuisance because the County did not prove that the vehicles are junk vehicles as defined by KCC 18.01.010(2)(r). His contention is misplaced. The County was not required to use the definition for junk vehicles in KCC 18.01.010(2) because the County did not cite Mr. Thompson under this provision of the nuisance code. The County declared Mr.

storage or accumulation of viable and/or operable agricultural equipment."

KCC 17.08.330.

Similarly, IPMC 302.8 applies to motor vehicles and states in applicable part, "Except as provided for in other regulations, no inoperative or unlicensed motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled."

Mr. Thompson contends that the hearing examiner incorrectly interpreted KCC 17.08.330 and IPMC 302.8.[3] Specifically, he contends that the phrases "inoperable vehicle" in KCC 17.08.330 and "inoperative vehicle" in IPMC 302.8 do not include vehicles that are reasonably capable of being operable. Mr. Thompson maintains that his vehicles can be reasonably rendered operable by adding a battery or changing a tire. Therefore, they are not inoperable.

---

Thompson's property a nuisance under KCC 18.01.010(1), not under KCC 18.01.010(2).

[3] Mr. Thompson's argument also addresses the definition of "junk" in KCC 17.08.329. Mr. Thompson's arguments for KCC 17.08.329, defining "junk," and KCC 17.08.330, defining "junkyard," are substantially the same as they both address the interpretation of "inoperable." Thus, the statutory analysis of KCC 17.08.330 also applies to KCC 17.08.329. Furthermore, the analysis of KCC 17.08.329 is not crucial to this decision because the hearing examiner did not make a conclusion regarding junk on Mr. Thompson's property.

Despite Mr. Thompson's contention, there is no reason to interpret KCC 17.08.330 and IPMC 302.8 because these statutes are unambiguous. The meaning of "inoperable" and "inoperative" can be determined by a plain reading of the statutes, using ordinary dictionary definitions. *Merriam-Webster's Tenth Collegiate Dictionary* defines "inoperable" as "inoperative." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 603 (10th ed. 1993). "Inoperative" means "not operative" or "a: not functioning . . . b: having no effect or force." *Id.* Here, an inoperative vehicle is one that does not function. A vehicle does not function when it does not start and/or drive; it has no effect or force. Particular to this situation, a car without a battery has no effect or force; it cannot start and be driven. Thus, it is inoperative. KCC 17.08.330 and IPMC 302.8 are unambiguous. The meaning of each statute is plain on its face. No further interpretation is needed.

Substantial evidence supports the hearing examiner's finding that Mr. Thompson's property contained a collection of multiple inoperable vehicles over the course of Officer Iammarino's investigation. The 2009 site visit identified numerous vehicles that did not start. Photographic evidence showed that the vehicles remained on the property, although some had changed location. Mr. Thompson did not produce evidence to establish that the cars are now operable. Accordingly, the trial court properly concluded that Mr.

11

Thompson's property constituted a junkyard in violation of KCC 17.08.330 and that the property violated IPMC 302.8 as adopted by KCC 14.04.010(7). The trial court did not err in ordering Mr. Thompson to remove the inoperable vehicles from his property and demonstrate to Officer Iammarino that any remaining vehicles on the property are operable and have current registration and license tags.

*"Junk Vehicle" or a "Junkyard."* Mr. Thompson contends that KCC 17.08.329, KCC 17.08.330, and KCC 18.01.010 are unconstitutionally vague. Specifically, these ordinances do not define the terms "inoperable vehicle," "apparently operable," or "unlicensed," and require persons of common intelligence to guess at the meaning and its application.

Under the due process clause, an "ordinance is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application." *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986). "When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: adequate notice to citizens and adequate standards to prevent arbitrary enforcement." *City of Seattle v. Huff*, 111 Wn.2d 923, 929, 767 P.2d 572 (1989).

12

The KCC provisions cited by Mr. Thompson are not vague. KCC 17.08.330 gives adequate notice that a collection of inoperable vehicles constitutes a junkyard and also violates IPMC 302.8. By its plain meaning, inoperative vehicles are vehicles that do not function. A person of common intelligence would not need to guess at the meaning of an inoperable vehicle and would understand that the term refers to a vehicle that cannot be driven in its current state.

Instead, Mr. Thompson offers an interpretation of the KCC that violates due process. He suggests that the KCC ordinances addressing inoperable vehicles do not apply to vehicles that are reasonably capable of being rendered operable. Mr. Thompson's interpretation of an inoperable vehicle adds ambiguity to an already clear term. Instead of having a straightforward definition of inoperable, meaning a vehicle that cannot start and be driven, Mr. Thompson's interpretation requires a person to guess if the County would consider a vehicle reasonably capable of being rendered operable. For some, this may mean the simple addition of a battery; for others, it could mean more. In effect, Mr. Thompson's interpretation would not alert a person to the prohibited conduct.

An ordinary citizen is capable of understanding that an inoperable car is one that cannot start or be driven in its current state, and the collection of these inoperable cars is

13

the conduct prohibited by KCC 17.08.329, KCC 17.08.330, and KCC 18.01.010. The ordinances are not unconstitutionally vague.

*Order Related to Mr. Thompson's Property.* Mr. Thompson contends that this court should reverse any order related to unsanitary conditions on Mr. Thompson's property. Mr. Thompson correctly noted that his notice of violation and abatement did not allege a violation of the IPMC for failing to maintain his property in a clean, safe, secure, and sanitary environment. Mr. Thompson's IPMC violation was for his storage of inoperable cars.

There is no need to reverse any portion of the hearing examiner's decision because the hearing examiner did not make a finding or a conclusion that Mr. Thompson failed to keep his property in a clean, safe, secure, and sanitary condition. Nor did the hearing examiner base his decision on unsanitary conditions on Mr. Thompson's property. Instead, the hearing examiner made a general statement that the KCC declared a public nuisance for one who fails to maintain his or her property in a clean, safe, secure, and sanitary condition and ordered Mr. Thompson to remove any vehicles and items that are not stored in this manner. This portion of the order simply reiterates what is already required of Mr. Thompson by the KCC. It does not impose any extra conditions on Mr. Thompson. There is no need to reverse this portion of the order.

14

*Animal Feed Stored in Vehicles.* Mr. Thompson contends that eight of his vehicles used to store animal feed are exempt from code enforcement because the vehicles meet the exception for agricultural equipment set forth in KCC 17.08.330.

The definition for "junkyard" in KCC 17.08.330 contains the provision that the definition "shall not be interpreted to include the normal storage or accumulation of viable and/or operable agricultural equipment."

At the violation hearing, it does not appear that Mr. Thompson raised this issue. Regardless, Mr. Thompson's evidence did not establish that his vehicles were exempt as agricultural equipment. The exception applies to the storage of viable and/or operable agricultural equipment. The trucks that Mr. Thompson used to store his animal feed were not operable. The animal feed is brought to the property and stored in the vehicles. When asked if these vehicles were operable, Mr. Thompson replied, "If I want them to be." Clerk's Papers at 7. The eight trucks on Mr. Thompson's property are not operable and therefore are not excluded as agricultural equipment. There is no need for further interpretation of this provision of the KCC.

Instead of the above argument, Mr. Thompson contended at the hearing that eight trucks could not be included in the violation because they were farm exempt from registration and licensing. Former RCW 46.16.010(5)(d) (2010) generally exempted farm

vehicles from motor vehicle registration, providing that the farm vehicle was used for the purpose of traveling between farms or other locations to engage in activities that supported farming operations.

The hearing examiner found that none of the vehicles stored and collected on the property met the definition of farm exempt within former RCW 46.16.010(5). This finding is supported by the evidence. A farm exempt vehicle is used for the purpose of traveling between locations. Mr. Thompson's vehicles were not capable of traveling between locations. Also, Mr. Thompson admitted that he stopped using the vehicles to transport feed and that the vehicles are now used for storage of feed. Even so, the registration statute does not have any bearing on the storage of Mr. Thompson's vehicles, which is the subject of this appeal.

The vehicles used to store animal feed are not excluded from the violation because they do not qualify under the agricultural equipment exception in KCC 17.08.330.

*Nonconforming Use of the Property.* "A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998).

A person claiming a legal nonconforming use bears the initial burden of showing that "(1) the use existed before the county enacted the zoning ordinance; (2) the use was lawful at the time; and (3) the applicant did not abandon or discontinue the use for over a year." *First Pioneer Trading Co. v. Pierce County*, 146 Wn. App. 606, 614, 191 P.3d 928 (2008). Once the burden of the nonconforming use has been established, the burden shifts to the municipality to show that the claimant abandoned or discontinued the use after the ordinance was enacted. *Id.*

Mr. Thompson did not claim a nonconforming use when he appealed to the hearing examiner. Because there was no argument, the hearing examiner did not make findings or conclusions regarding whether a nonconforming use existed. There is no decision on the issue for us to review. Regardless, Mr. Thompson failed to meet his burden of establishing a legal nonconforming use. He did not present evidence that the use existed or was lawful before the ordinance was enacted. Mr. Thompson's testimony that he obtained a permit in 1981 to restore cars is insufficient to meet his burden. This testimony does not establish how Mr. Thompson used his property or that he engaged in a use that was lawful at the time. Mr. Thompson failed to establish the existence of a nonconforming use.

17

*Procedural Due Process.* Mr. Thompson contends that the hearing examiner violated his due process rights by not allowing him to cross-examine the code enforcement officer, Officer Iammarino. However, there is no evidence that Mr. Thompson ever sought to question Officer Iammarino. Even at the hearing, Mr. Thompson never asked to question Officer Iammarino, even though the hearing examiner repeatedly asked Mr. Thompson if there was anything else he wanted to add to support his case. Mr. Thompson told the hearing examiner that he was relying on his own testimony and that of his witnesses to rebut Officer Iammarino's declaration. No due process violation occurred.

Next, Mr. Thompson contends that the hearing examiner violated his due process rights by not allowing him to present his expert witnesses. The trial court did not commit error by prohibiting Mr. Thompson's witnesses from giving expert testimony because Mr. Thompson did not establish their expertise. Again, no due process violation occurred.

Last, Mr. Thompson contends that the hearing examiner should not have considered Officer Iammarino's declaration because it contained hearsay. Mr. Thompson did not challenge the declaration when it was presented by the County. Therefore, he waives any hearsay challenge on appeal. *See State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976).

18

Mr. Thompson's due process and hearsay challenges fail.

*Attorney Fees.* The County requests attorney fees on appeal pursuant to

RAP 18.9(a) and RCW 4.84.370(1).

RAP 18.9(a) permits this court to order a party to pay attorney fees if the party files

a frivolous appeal. "An appeal is frivolous if, considering the entire record, the court is

convinced that the appeal presents no debatable issues upon which reasonable minds

might differ, and that the appeal is so devoid of merit that there is no possibility of

reversal." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170

Wn.2d 577, 580, 245 P.3d 764 (2010). "Raising at least one debatable issue precludes

finding that the appeal as a whole is frivolous." *Id.*

RCW 4.84.370(1) generally provides reasonable attorney fees on appeal to the

party that prevails in the appellate court's review of a municipality's decision to issue,

condition, or deny a developmental permit involving a site-specific rezone, zoning, plat,

conditional use, variance, shoreline permit, building permit, site plan, or similar land use

approval or decision.

The County is not entitled to attorney fees under either of these provisions.

RAP 18.9(a) does not warrant attorney fees because Mr. Thompson's appeal is not

entirely frivolous. His argument over the interpretation of the KCC has some merit.

No. 30996-7-III
*Thompson v. Kittitas County*

RCW 4.84.370(1) does not warrant attorney fees because Mr. Thompson's appeal does not involve the County's decision on a developmental permit. The County's request for attorney fees is denied.

We affirm the decision of the hearing examiner. We deny the County's request for attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____     _____
Siddoway, A.C.J.                      Fearing, J.

20