

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE  SEP 1 2 2013

_Madsen, C. J._
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sep 12, 2013

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 87501-4 |
| DEVON ADAMS, | ) ) | En Banc |
| Petitioner. | ) ) ) | Filed    SEP 1 2 2013 |

C. JOHNSON, J.—This case involves a claim under RCW 10.73.090 of facial invalidity in a 2000 judgment and sentence, based on an incorrectly calculated offender score. Devon Adams claims that, since he successfully challenged his offender score in a 2009 collateral attack and was resentenced, he should now be able to raise an ineffectiveness of trial counsel claim. The Court of Appeals, relying on our decisions in *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011), and *In re Personal Restraint of Skylstad*, 160 Wn.2d 944, 162 P.3d 413 (2007), dismissed his petition as time barred. The Court of Appeals also dismissed Adams's petition because it was successive. We affirm on the basis that Adams's petition is untimely.

FACTS AND PROCEDURAL HISTORY

In 1999, Devon Adams, who was drunk and high on "sherm," was walking down a residential street in Seattle when he confronted Franklin Brown.[1] Brown was a 41-year-old man with significant developmental disabilities. He was known in his community as a peaceful man who would go door-to-door with his "weed-whacker" trying to earn money. Brown was unarmed, carrying only his weed-whacker and an extension cord. Adams started harassing Brown and patting down Brown's pockets, stating, "What have you got?" State's Resp. to Personal Restraint Petition (Response), App. B at 2. When Brown asked to be left alone, Adams pulled out a gun and held it to Brown's neck, stating, "[Y]ou don't know who you are messing with." Response, App. C at 4. Adams lowered the gun and began to walk away, but then he turned around, shoved the gun into Brown's neck, and began firing. After Brown fell to the ground, Adams stood over him and fired several more rounds into his back as he lay there.

The State charged Adams with first degree murder and unlawful possession of a firearm. In 2000, Adams proceeded to trial. Adams's defense counsel, Michael Danko, sought and received jury instructions on the lesser offenses of second degree murder, first degree manslaughter, and second degree manslaughter. Danko

---

[1] Adams did not provide us with a report of proceedings. The facts recited are based on court documents and affidavits of trial counsel submitted as appendices to the State's response to personal restraint petition (Response). *See* Apps. B, C, D, and E.

also persuaded the court to provide a voluntary intoxication instruction. A jury found Adams guilty as charged.

Posttrial, defense counsel hired Dr. John P. Berberich to conduct a psychological evaluation of Adams for sentencing purposes. Based on Berberich's report, defense counsel sought an exceptional sentence on the basis of diminished capacity. The court found that although Adams's diminished capacity "does not [give] rise to a complete defense . . . [it] plays a significant role in determining an appropriate sentence." Response, App. T at 2. The trial court imposed an exceptional sentence below the standard range of 360 months. Adams did not appeal.

In 2001, Adams filed a personal restraint petition (PRP), asserting ineffective assistance of counsel. Adams, acting pro se, argued that defense counsel failed to inform him of an offer to plead guilty to second degree murder. The Court of Appeals dismissed the petition as conclusory and therefore "not sufficient to command judicial consideration and discussion." Response, App. Z at 4.

In April 2009, represented by counsel, Adams filed a motion to vacate his judgment and sentence. He argued that his judgment and sentence was invalid on its face because his offender score had been miscalculated. The State agreed that

some of Adams's juvenile adjudications had washed out and should not have been included in his offender score. In June 2009, the trial court resentenced Adams to 304 months based on the recalculated offender score. Adams again did not appeal.

Adams filed the current PRP in the Court of Appeals in October 2009. Adams argued that defense counsel was ineffective in failing to inform him of a second degree murder plea offer. Adams learned of the alleged plea offer after reading a *Seattle Times* article, published on April 7, 2000, reporting that the prosecutor "said he expected a plea of second-degree murder." PRP, App. C. Adams also argued that defense counsel was ineffective in failing to investigate and develop a diminished capacity defense. Because his petition was filed within one year of his resentencing, Adams claimed his petition was timely under RCW 10.73.090. The Court of Appeals stayed the petition pending our decision in *Coats*, 173 Wn.2d 123. In 2012, the court lifted the stay and dismissed Adams's PRP as untimely and successive. We granted discretionary review.

ANALYSIS

We must determine whether Adams's ineffective assistance claims are timely under RCW 10.73.090. Criminal defendants may file collateral attacks against their judgment and sentence but must do so within one year of their judgment being final. RCW 10.73.090(1) provides, "No petition or motion for

4

collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." The time bar may be avoided if the petitioner can establish one of six exceptions listed under RCW 10.73.100.[2] Adams does not argue that his ineffective assistance claims fit one of these enumerated exceptions. Instead, he relies on the language in .090 that provides that a judgment must be "valid on its face" in order for the time bar to apply.

No dispute exists here that Adams's 2000 judgment and sentence was not "valid on its face" based on the offender score error. However, the parties dispute whether this facial invalidity permits Adams to raise an ineffective assistance of counsel claim in the current PRP. Adams asks us to hold that it does, arguing that the statute plainly says that the time bar does not start to run until a judgment is "valid on its face." According to Adams, because his original judgment and sentence was not "valid on its face," the collateral attack time bar is measured from the date of his 2009 judgment and sentence and therefore is timely. The State responds that per our decision in *Coats*, the time bar exception for a judgment and

---

[2] The six exceptions listed in RCW 10.73.100 include (1) new evidence has been discovered, (2) the statute that the defendant violated was unconstitutional, (3) the conviction was barred by double jeopardy, (4) the evidence was insufficient to support the conviction, (5) the sentence exceeded the court's jurisdiction, and (6) there has been a significant change in the law that applies retroactively.

sentence that is not "valid on its face" does not act as a "super exception" that opens the door to *all* claims, including those that do not relate to the invalidity of the judgment and sentence.

As noted by the State, Adams advances a position similar to the one we rejected in *Coats*. In *Coats*, the petitioner filed a PRP 14 years after being sentenced, asserting that his judgment and sentence was facially invalid. He further argued that this facial invalidity allowed him to challenge the voluntariness of his guilty plea. The majority held that a misstatement of the statutory maximum sentence on the judgment and sentence did not constitute a facial invalidity. The two concurring opinions disagreed with the majority's conclusion that the error did not constitute a facial invalidity. However, all three opinions agreed that "[t]he exception for facially invalid judgments and sentences may not be used to circumvent the one-year time bar to personal restraint petitions relating to fair trial claims." *Coats*, 173 Wn.2d at 141 (Chambers, J., majority), 145 (Madsen, C.J., concurring) ("the petitioner's main contention—that once the one-year time bar of RCW 10.73.090(1) is avoided as to one claim, it is automatically avoided as to all claims" is an "improper interpretation of the statute"), 164 (Stephens, J., concurring) ("the remedy for an invalid judgment and sentence is correction of the

6

error that renders the judgment and sentence invalid, not opening the door to other time-barred claims").

The conclusion in *Coats* is consistent with the rules of statutory construction that require that the statutory provisions be analyzed together in order to fulfill the intent of the statute. *Advanced Silicon Materials, LLC v. Grant County,* 156 Wn.2d 84, 89-90, 124 P.3d 294 (2005). In interpreting a statute, our primary goal is to give effect to the legislature's intent. To determine legislative intent, we first look to see if the meaning of the statute is plain on its face. "The plain meaning of a statute 'is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *Advanced Silicon,* 156 Wn.2d at 89-90 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). That is, individual subsections are not addressed in isolation from the other sections of the statute, especially where to do so undermines the overall statutory purposes.

The statute at issue here, RCW 10.73.090, establishes a one-year time limit for raising claims as the general rule. A related statute, RCW 10.73.100, creates limited, narrow exceptions to the one-year time limit and further confines the issues that may be raised to solely those that the exceptions create. RCW 10.73.100 ("The time limit specified in RCW 10.73.090 does not apply to a petition or

7

motion that is based *solely* on one or more of the following grounds." (emphasis added)). Although the legislature did not list "exceptions" to the time limit in RCW 10.73.090, it did specify two preconditions in order for the time limit to apply: (1) that the judgment and sentence be "valid on its face" and (2) that the judgment and sentence be "rendered by a court of competent jurisdiction." RCW 10.73.090(1).

We have referred to these two preconditions as additional, narrow "exceptions" to the time limit. *See Coats*, 173 Wn.2d at 141; *see also In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 698, 72 P.3d 703 (2003); *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 346, 349, 351, 5 P.3d 1240 (2000). Because the "valid on its face" precondition is an exception, once the one-year time limit has run, a petitioner may seek relief only for the defect that renders the judgment not valid on its face (or one of the exceptions listed in RCW 10.73.100). And when that defect is cured, the entry of a corrected judgment does not trigger a new one-year window for judgment provisions that were always valid on their face.

Under the complete statutory scheme, then, the time bar may be avoided only where the petitioner raises a claim that is based on one of the exceptions under RCW 10.73.090 or .100. Contrary to what Adams contends, raising a claim under one of the exceptions in RCW 10.73.090 does not open the door to other

time-barred claims. As noted, the exceptions in RCW 10.73.100 do not have that effect, and we see no reason to treat the exceptions in RCW 10.73.090 differently from those in RCW 10.73.100. In this case, consistent with the reasoning expressed in the *Coats* opinions, the Court of Appeals held that the facial invalidity in Adams's judgment and sentence does not waive the time bar for his ineffectiveness of counsel claim. We agree and affirm the Court of Appeals. If Adams had raised his ineffectiveness claim simultaneously with his sentencing error claim, *Coats* would directly control the result in this case. The difference in posture of the two cases does not affect this result. As the State contends, to hold otherwise would effectively overrule *Coats* because a petitioner could simply wait to raise a fair trial claim until *after* the trial court corrects an error that renders the judgment and sentence invalid.[3]

Adams argues that *Coats* is not controlling here because, in that case, a majority of the court concluded that Coats's judgment and sentence was valid on its face, so any discussion of the effect of the time bar on a PRP when a judgment is not valid on its face is dicta. Even if Adams were correct, *Coats* does resolve the

---

[3] The concurrence/dissent seems to suggest that the discussion and analysis in *Coats* that we rely on is limited to the remedy available to a defendant challenging a technical defect in the judgment and sentence. However, the concurrence/dissent misreads *Coats* because the discussion in that case relates to the available remedy when the judgment and sentence is not "valid on its face." Thus, the discussion in *Coats* is not limited to the facts of that case as the concurrence/dissent suggests.

9

statutory interpretation on what remedy is available under these circumstances. As Justice Stephens said in her concurring opinion in *Coats*, in determining whether a facial invalidity waives the one-year time bar for all claims, it is important to read the statutes governing untimely PRPs all together. If a petition raises a claim that falls within one of the exceptions to the time bar in RCW 10.73.100 we will consider it, but if the claim does not fall within one of these exceptions we will not consider it. As explained, "Under RCW 10.73.100, there is no notion of a claim serving as a gateway for consideration of other claims that do not fit within one of the enumerated exceptions." *Coats*, 173 Wn.2d at 169 (Stephens, J., concurring). Further:

> Coats would have us construe the invalidity exception in RCW 10.73.090 as a 'super exception' that removes the time bar not only for the specific claim that fits the exception, but for all other claims as well. I see no reason to treat the exceptions in RCW 10.73.090 so differently from the exceptions listed in RCW 10.73.100. There is no indication that the legislature intended an invalidity in the judgment and sentence to have the sweeping effect Coats attributes to it—that is, to waive the time bar for all untimely claims regardless of whether they relate to the validity of the judgment and sentence. As noted above, none of the exceptions to RCW 10.73.100 have that effect. Moreover, to open the door to claims that do not fall within one of the enumerated exceptions in RCW 10.73.090 or RCW 10.73.100 would require us to ignore the interests of finality in situations where the legislature intended finality to carry the day.

*Coats*, 173 Wn.2d at 170 (Stephens, J., concurring). We expressly adopt this reasoning and conclude that Adams's ineffectiveness claims are time barred

10

because they do not fit within any of the exceptions listed in chapter 10.73 RCW. This conclusion is consistent with the complete statutory framework applicable to untimely PRPs. Moreover, it is consistent with the history behind the right to petition the court for relief from personal restraint, which we discussed at length in *Coats*. *See generally Coats*, 173 Wn.2d 123.

Contrary to what Adams contends, adopting the reasoning in *Coats* would not require overruling *Skylstad* where we said that "Skylstad's judgment could not be final until his sentence was final." *Skylstad*, 160 Wn.2d at 950.[4] Adams reads the language in *Skylstad* out of context to suggest that his judgment did not become final for purposes of the time bar until 2009. But *Skylstad* dealt with whether a judgment is final for purposes of RCW 10.73.090 when direct review of a defendant's sentence is still pending. There, we held that the limitations period does not begin until both the conviction and sentence become final by the conclusion of direct review or the expiration of the time for seeking such review. Because Skylstad's sentence was still under direct review, we concluded that the time bar had not started to run. In contrast, in this case, Adams did not appeal his judgment and sentence, so his judgment became final for purposes of the statute on

_____

[4] Adams also relies on the United States Supreme Court's rule for determining finality for purposes of appeal set forth in *Berman v. United States*, 302 U.S. 211, 58 S. Ct. 164, 82 L. Ed. 204 (1937). But his reliance on this case is misplaced because it is inapplicable to our determination of finality for purposes of collateral attack in state court under chapter 10.73 RCW.

11

the date when the trial court clerk filed the judgment in 2000. RCW 10.73.090(3)(a); *see also Skylstad* 160 Wn.2d at 948 ("If a defendant chooses not to appeal (or his time to appeal expires), judgment is final when the trial court clerk files the judgment. RCW 10.73.090(3)(a)."). Thus, *Skylstad* is not at odds with the reasoning in *Coats*.

Here, we conclude that a proper analysis of RCW 10.73.090 and .100 requires dismissal of Adams's ineffectiveness of trial counsel claim as time barred. Adams's ineffectiveness claim does not fit within any of the exceptions listed under chapter 10.73 RCW. Although a sentencing error was found in Adams's judgment and sentence, that error was corrected and our cases make clear that Adams's remedy is limited to correcting the sentencing error. We affirm the dismissal of Adams's PRP as untimely.

No. 87501-4

_[signature]_

WE CONCUR:

_Madsen, C.J._

_Stephens, J._

_Owens, J._

_Wiggins, J._

_Fairhurst, J._

_González, J._

_[signature]_

13

No. 87501-4

GORDON McCLOUD, J. (concurring in part/dissenting in part)—RCW 10.73.090 establishes a one year time limit for filing a personal restraint petition (PRP). The question presented here is, when does that year start running? The answer depends on statutory construction, since it is a statute that created the "one year" time limit and that explained when it starts: "after the judgment becomes final if the judgment and sentence is valid on its face." RCW 10.73.090(1). The language of RCW 10.73.090, when read in context with related RCW 10.73.100, compels the conclusion that the "one year" does not begin until a "valid" "judgment and sentence" is entered—and in this case, that did not occur until 2009.

ANALYSIS

As the majority states, the original "judgment and sentence" entered in 2000 was not "valid on its face." The defect was corrected via resentencing in 2009, and a new "judgment and sentence" was then entered. That judgment and sentence

was valid on its face. In fact, it is the only "valid on its face" "judgment and sentence" that has ever been entered in this case. Under the plain language of RCW 10.73.090(1), the "one year" for filing a PRP started when that valid "judgment and sentence" was entered in 2009. Devon Adams filed the current PRP—his third postconviction challenge—before that one year elapsed. Under that plain language, the PRP was timely. The petitioner clearly has the better of this statutory interpretation argument.

The State is correct that this conclusion undermines some of the values upon which RCW 10.73.090-.100 are based—the values of finality and repose. State's Resp. to PRP at 10-12 (discussing interpretation of this and related statutes in *State v. Barberio*, 121 Wn.2d 48, 846 P.2d 519 (1993) and *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009)). But this conclusion also protects other values upon which those statutes are based, that is, the values of error correction and integrity of proceedings that the legislature carefully balanced against finality. This legislative balancing is clear from the fact that those statutes actually expand protections against invalid detention beyond the constitutional minimum[1] by exempting from the one-year time bar many claims that the state constitution

---

[1] *See In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 444-45, 853 P.2d 424 (1993).

would not necessarily have previously protected. Thus, the State's argument not only conflicts with the statute's language (as discussed above); it also fails to acknowledge that RCW 10.73.090-.100 balance competing policy interests and do not blindly favor finality over error correction in all cases.

Further, the State's, and the majority's, interpretation of RCW 10.73.090 would render that statute's inclusion of the "valid on its face" trigger for counting the one-year time limit inoperative or superfluous in many cases. That interpretation contradicts the rule that "no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error." *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991). Neither the State nor the majority calls RCW 10.73.090's language an obvious mistake or error.

The majority deals with the conflict between the statutory language and legislative balancing on the one hand and its own policy preference on the other hand by relying on *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011). *Coats* stated that RCW 10.73.090's facial invalidity language cannot be "used to make an end run" around the limited exceptions to the one-year time bar listed in RCW 10.73.100(1)-(6). *Id.* at 141; *see also id.* at 170 (Stephens, J., concurring) (arguing that the facial invalidity provision of RCW 10.73.090 should

not be construed "as a 'super exception' that removes the time bar not only for the specific claim that fits the exception, but for all other claims as well"). But that statement from *Coats* was dicta. As the majority here acknowledges, the *Coats* majority held only that "a misstatement of the statutory maximum sentence on the judgment and sentence did *not* constitute a facial invalidity." Majority at 6 (emphasis added) (citing *Coats*, 173 Wn.2d at 141 (Chambers, J., majority), 145 (Madsen, C.J., concurring), 164 (Stephens, J., concurring)). Since the *Coats* judgment and sentence was not invalid, the comments in the three *Coats* opinions about what the result could have been if it had been invalid are dicta.

The "end run" statement from *Coats* is also incorrect. The reasoning leading to that "end run" dicta may be summed up as follows: RCW 10.73.100 creates six "grounds" that constitute exceptions to the one-year time bar, and each otherwise untimely claim must fit within one of those "grounds" to be timely; RCW 10.73.090 has completely different language that exempts the entire "petition," RCW 10.73.090(1), rather than specifically listed "grounds," from the one-year time bar in certain circumstances; despite this difference in language and structure, this court will interpret those two statutes identically to further our own policy preferences. Majority at 8.

4

This does have the virtue of symmetry. It might even be good policy—it does harmonize the scope of *PRPs* following postconviction resentencing with the limited scope of *appeals* following postconviction resentencing. *See, e.g., Barberio*, 121 Wn.2d at 51. But it is not proper statutory interpretation. Statutory interpretation begins with the plain language and meaning of the statute, viewed in the context of the larger statutory scheme. Where the plain meaning of a statute is unambiguous, legislative intent is apparent, and we will not construe the statute otherwise. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). However, plain meaning may be gleaned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). We resort to aids to statutory construction, such as policy or legislative history, only if the statute remains ambiguous after that plain meaning inquiry. *Id.* at 12.

Here, the larger statutory scheme—RCW 10.73.090-.100—expands protections for criminal defendants beyond the constitutional minimum.[2] RCW 10.73.100 specifically lists "*grounds*" to which "[t]he time limit specified in RCW 10.73.090 does not apply." (Emphasis added.) A "ground" is a claim for relief, not a whole petition. *See In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488-89,

---

[2] *Runyan*, 121 Wn.2d at 444-45.

5

789 P.2d 731 (1990) (discussing the meaning of "grounds for relief"). In other words, RCW 10.73.100 requires a claim-by-claim analysis. RCW 10.73.090, in contrast, exempts the entire "petition or motion for collateral attack" from the one-year time limit if the triggering condition exists, that is, if the original judgment is not "valid." RCW 10.73.090's plain language, in the context of the statutory scheme as a whole, does not require a claim-by-claim analysis at all. That difference—that supposed "end run" or "super exception"—was created by the legislature, not by this court.

The majority notes that if I am correct, then a petitioner could file stale collateral claims challenging his conviction many years later if he or she first filed a meritorious challenge that resulted in a resentencing. Majority at 9 ("[T]o hold otherwise would effectively overrule *Coats* because a petitioner could simply wait to raise a fair trial claim until *after* the trial court corrects an error that renders the judgment and sentence invalid."). That result is admittedly awkward. It stands in tension with the rule limiting postresentencing appeals to claims challenging the new sentence, rather than the old conviction. *See Barberio*, 121 Wn.2d at 51. It also stands in tension with our rule that the PRP should not replace the appeal. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 10, 84 P.3d 859 (2004). But this court cannot deal with that tension by rewriting the statutory language.

6

How should this tension be addressed? Often, the problems identified by the majority will be cured by rules limiting successive PRPs. In many cases, RAP 16.4(d), barring "more than one petition for similar relief on behalf of the same petitioner,"[3] will serve that function. In this case, the State argues that the current PRP is barred by RAP 16.4(d)'s rule against raising the *same claim* more than once, because Mr. Adams's first, 2001, pro se PRP raised three ineffective assistance claims. But the Court of Appeals dismissed Adams's 2001 petition without addressing the merits as "not sufficient to command judicial consideration and discussion." State's Resp. to PRP, App. Z at 4. Because the merits of Adams's ineffective assistance claims were not previously reviewed, RAP 16.4(d) does not bar a new petition raising the same claims.[4]

---

[3] RAP 16.4(d) bars only successive PRPs raising the same claim—not successive PRPs raising a different claim. *E.g., In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 262-63, 36 P.3d 1005 (2001) (RAP 16.4(d) bars consideration of a second PRP, absent good cause, only where it seeks "*similar relief*" to prior PRP (emphasis added)); *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 502-03, 681 P.2d 835 (1984) (following definition of "similar relief" in *Sanders v. United States*, 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963), successive petition could be dismissed under RAP 16.4(d) only where prior PRP had been denied on grounds previously heard and determined on merits).

[4] In addition, that 2001 PRP raised three claims of ineffective assistance; the current PRP raises two claims of ineffective assistance, and only one of them (alleging failure to transmit the offer to plead guilty to second degree murder) is repetitious. The other ineffective assistance claim in the current PRP—alleging failure to research and present a diminished capacity defense at trial—is new.

In other cases, the abuse of the writ doctrine will vindicate the policy concerns identified by the State. Under that doctrine, a subsequent post conviction petition cannot raise claims that were "available but not relied upon" in an earlier challenge.[5] The State, however, explicitly declined to rely on the abuse of the writ doctrine, likely because it did not apply to Mr. Adams, whose prior PRP was filed pro se.[6] Suppl. Br. of Resp't at 11.

That leaves a timely PRP raising two ineffective assistance claims for us to consider. One of those ineffective assistance claims does not meet the *Rice* standard for obtaining an evidentiary hearing.[7] Both the trial prosecutor and Mr. Adams's trial counsel submitted affidavits based on first-hand knowledge stating that no offer to plead guilty to second degree murder was ever made in this case. The only evidence Mr. Adams provides consists of a *Seattle Times* article, his

---

[5] *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 700 & n.11, 9 P.3d 206 (2000) (abuse of writ occurs if successive PRP raises claim that was "'available but not relied upon in a prior petition'" (internal quotation marks omitted) (quoting *Jeffries*, 114 Wn.2d at 492)).

[6] *In re the Pers. Restraint of Turay*, 153 Wn.2d 44, 48, 101 P.3d 854 (2004) (abuse of the writ is an affirmative defense that the State must plead) (citing *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)); *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 363, 256 P.3d 277 (2011) (abuse of writ defense unavailable where petitioner proceeded pro se in previous postconviction challenge).

[7] *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) (to obtain a reference hearing, "petitioner must demonstrate that he has competent, admissible evidence to establish the facts [alleged]" based on "affidavits" containing admissible evidence).

affidavit, and his mother's affidavit, all of which contain claims of what others may have said but no assertion that such an offer was actually made. Such allegations based on inadmissible hearsay do not survive the *Rice* standard. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).[8] Thus, Mr. Adams fails to show that an evidentiary hearing on this claim is justified.

The other ineffective assistance of counsel claim, however, does meet the *Rice* standard. It is the claim that trial counsel was deficient for failing to obtain an easily available psychologist's report that would have revealed not just the horrific childhood of torture and abuse that Mr. Adams suffered[9] but also the fact that it left Mr. Adams with severe psychological problems that "significantly impaired his ability, at the time of the homicide, to appreciate the wrongfulness of his behavior." PRP, App. F at 8.[10] This information was easily available; trial counsel in fact obtained it right after trial and in preparation for sentencing. Mr. Adams'

---

[8]Petitioner does not challenge the *Rice* standard. *Cf. Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 979, 216 P.3d 374 (2009) (constitutional right of access to the courts "'includes the right of discovery authorized by the civil rules'" (quoting *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991))).

[9]According to the report, from a young age Mr. Adams was "exposed to the most vicious kind of abuse." PRP, App. F at 7. One of Mr. Adams's earliest memories is his father holding "a knife to his mother's throat." *Id.* at 3. Throughout Mr. Adams's early childhood, his father "terrorized the family." *Id.*

[10]The report further concluded that the "juvenile system failed [Mr. Adams]" and that Mr. Adams is now "in desperate need of psychotherapy." PRP, App. F at 8.

9

claim that his counsel was ineffective in obtaining the report too late is worthy of an evidentiary hearing.

## CONCLUSION

The majority correctly notes the problem with allowing a prisoner to challenge his original conviction following a successful PRP resulting in resentencing but not following a successful appeal resulting in resentencing. But that results from the language, structure, and legislative choices reflected in RCW 10.73.090 and .100. I therefore concur in the majority's decision to dismiss the ineffective assistance claim based on counsel's alleged failure to transmit the plea offer, but dissent from its decision to dismiss the ineffective assistance claim based on counsel's failure to discover Mr. Adams's alleged incapacity until trial was over.

<u>                    Gordon McCloud, J.                    </u>