FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8: 32

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT KANANY, | No. 46340-7-II |
| Appellant, | |
| v. | |
| CITY OF BONNEY LAKE, a municipal corporation; STEPHEN K. CAUSSEAUX, JR., as Bonney Lake Hearing Examiner; and JOHN P. VODOPICH, as City of Bonney Lake Community Development Director/Building Official, | |
| Respondents. | UNPUBLISHED OPINION |

LEE, J. — Robert Kanany appeals the superior court's denial of his appeal under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The superior court affirmed the hearing examiner's determination that the Bonney Lake Municipal Code (BLMC) does not permit an accessory dwelling unit (ADU) on the same lot as a duplex. Because the plain language of the BLMC clearly prohibits ADUs in conjunction with any duplex, we affirm and grant the City's request for appellate attorney fees and costs.

FACTS

Kanany owns two duplex properties in the city of Bonney Lake (City). Both properties are in the City's medium-density residential district, the R-2 zone. In addition to a duplex, each property has a two-story, detached garage. A construction permit for one of the duplexes stated that per code, the detached garage could not be converted to living space.

In 2009, the City received a complaint about Kanany allowing tenants to live in the space above one of his garages. The City investigated and determined that he was maintaining an illegal ADU on the same property as his duplex. The City issued a notice of violation and imposed daily fines, and eventually filed a lawsuit for monies owed. The trial court entered judgment in the City's favor, and Kanany appealed that judgment to this court. *City of Bonney Lake v. Kanany*, 185 Wn. App. 309, 340 P.3d 965 (2014) (published in part). In a part-published opinion, we upheld the judgment in the face of Kanany's due process challenge. *Id.* at 319-20.

While that appeal was pending, Kanany sought an interpretation of BLMC 18.22.090(C)(1) from the City Community Development Director (Director). That code provision states:

> C. Requirements. The creation of an accessory dwelling unit shall be subject to the following requirements, which shall not be subject to waiver or variance:
>
> 1. Number. One accessory unit shall be allowed per legal building lot as a subordinate use in conjunction with any single-family residence; no ADU will be permitted in conjunction with any duplex or multiple-family dwelling units.

BLMC 18.22.090(C)(1). The Director interpreted that provision to mean that "no ADU will be permitted anywhere on the same legal lot with any duplex or multiple-family dwelling units." Clerk's Papers (CP) at 20. The Director concluded that the BLMC unambiguously prohibits ADUs and duplexes on the same lot.

On October 4, 2013, Kanany appealed the Director's decision to the city hearing examiner. CP 35. He asked the hearing examiner to "narrowly construe . . . BLMC 18.22.090(C)(1) to apply only to an ADU that is conjoined or physically attached to a duplex unit in the R-2 zone." CP at 33. The City responded with a report that outlined the history of its ADU dispute with Kanany and the parties' conflicting interpretations of the code.

Kanany also asked for the rules relevant to the pending hearing and for access "to the tools and procedural mechanisms I may require in order to develop a full and adequate record for review, including any appropriate discovery from City officials and staff." CP at 34. Kanany noted his intent to represent himself during the hearing with the assistance of Fred Brown, a building designer and land use consultant. When Brown inquired about the appeal procedures, the Director cited BLMC 14.120.020.

On November 5, 2013, Kanany sought a continuance of the hearing scheduled for November 15. He requested at least a "couple weeks" so that he could better prepare for the hearing and contact possible witnesses. CP at 126. One of those witnesses was a neighbor who also owned a duplex. The City opposed the continuance and the hearing examiner denied it after reviewing Kanany's request for the code interpretation and the other appeal materials. "The appeal concerns the interpretation of 1-2 sections of the [BLMC]. Both the appellant's and the City's positions on these interpretations are well set forth in the code interpretation and in the appeal. The Examiner sees no reason to continue the hearing." CP at 128.

At the November 15 hearing, Kanany represented himself and presented two witnesses: Fred Brown and Connie Brown, director of the Tacoma/Pierce County Affordable Housing Consortium. After the hearing examiner explained the hearing's procedure, the City's attorney

3

presented argument and Kanany read a lengthy statement that outlined the history of his ADU dispute with the City.

Kanany then complained that he had not received a copy of the rules for the hearing and that the denial of a continuance had prevented him from obtaining additional witnesses. The hearing examiner replied that the City did not have any hearing examiner rules, explained that "we are handling this hearing the same way as we do every hearing," and added that the code interpretation at issue was a legal rather than factual question. CP at 200-01.

Fred Brown then presented his interpretation of BLMC 18.22.090 and accused the City of unfair tactics. When the hearing examiner asked him to focus on the appeal, Brown presented further argument and complained of the City's "constant deception." CP at 206. Both Brown and Kanany submitted written statements to the hearing examiner.

Connie Brown asked to speak about affordable housing and how it relates to density. The hearing examiner explained that such testimony was irrelevant to the question presented and asked whether she had any information to present about the code section at issue. When she did not, the hearing examiner did not allow her to testify but did allow her to put written material into the record.

The hearing examiner denied Kanany's appeal and upheld the Director's code interpretation. The hearing examiner concluded that "[s]ection 18.22.090(C)(1) BLMC is not ambiguous and is clear from the ordinary meaning of its language and its context," and that the code "clearly prohibits ADUs in conjunction with any duplex." CP at 241. After the hearing examiner denied reconsideration, Kanany filed a LUPA petition in superior court. The superior court affirmed the hearing examiner's decision, and Kanany appealed to this court.

No. 46340-7-II

ANALYSIS

A.   STANDARD OF REVIEW

LUPA is the exclusive means for judicial review of land use decisions with a few exceptions. RCW 36.70C.030(1); *Twin Bridge Marine Park, LLC v. Dep't of Ecology*, 162 Wn.2d 825, 854, 175 P.3d 1050 (2008). Under LUPA, this court reviews the hearing examiner's decision on the basis of the administrative record rather than the superior court's decision and record. *Milestone Homes, Inc. v. City of Bonney Lake*, 145 Wn. App. 118, 125, 186 P.3d 357 (2008). The party seeking relief from a land use decision must establish one of the errors set forth in RCW 36.70C.130(1):

> (a)    The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b)    The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c)    The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d)    The land use decision is a clearly erroneous application of the law to the facts;
> (e)    The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
> (f)    The land use decision violates the constitutional rights of the party seeking relief.

This burden to prove error rests with the petitioning party on appeal. *Tahoma Audubon Soc'y v. Park Junction Partners*, 128 Wn. App. 671, 681, 116 P.3d 1046 (2005). Kanany's arguments focus on claims of error that implicate subsections (a), (b), and (f).[1] These subsections

---

[1] Kanany cites the other subsections in RCW 36.70C.130 without providing any supporting argument, so we do not consider the standards in RCW 36.70C.130(1)(c), (d), and (e). RAP 10.3(a)(6); *Bale v. Allison*, 173 Wn. App. 435, 451, 294 P.3d 789 (2013).

5

present questions of law that we review de novo. *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

B.     RCW 36.70C.130(1)(b):  Interpretation of BLMC 18.22.090(C)(1)

At issue is the hearing examiner's interpretation of BLMC 18.22.090(C)(1).  Courts interpret local ordinances the same as statutes. *Milestone Homes,* 145 Wn. App. at 126.  An unambiguous statute will be applied according to its plain meaning, while only ambiguous statutes will be construed. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *Milestone Homes*, 145 Wn. App. at 126.  In addition to considering the ordinary meaning of the language used, the plain meaning of a statute may be discerned from all that the legislature body has said in it and from related statutes that disclose legislative intent about the provision in question. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).  Individual subsections are not addressed in isolation from the other sections of the statute, especially where to do so undermines the overall statutory purpose. *In re the Matter of the Pers. Restraint of Adams*, 178 Wn.2d 417, 424, 309 P.3d 451 (2013).

BLMC 18.22.090 governs ADU regulations and consists of three sections.  Section A explains the intent behind ADUs, which includes adding affordable housing and increasing housing density.  BLMC 18.22.090(A)(2), (6).  This section also explains that ADUs are intended to protect the "single-family residential appearance."  BLMC 18.22.090(A)(5).  Section B explains the procedures by which a property owner may obtain an ADU permit.  Section C sets forth eight separate requirements for creating ADUs and adds that they "shall not be subject to waiver or variance."  BLMC 18.22.090(C).

At issue here is the first requirement in Section C. That requirement sets forth the number of ADUs permitted with single-family residences and duplexes: "One accessory unit shall be allowed per legal building lot as a subordinate use in conjunction with any single-family residence; no ADU will be permitted in conjunction with any duplex or multiple-family dwelling units." BLMC 18.22.090(C)(1). An additional requirement provides that ADUs must be designed to maintain the appearance "of the existing single-family residence." RCW 18.22.090(C)(5).

Both the Director and the hearing examiner found that the language in BLMC 18.22.090(C)(1) plainly prohibits the construction of an ADU on property containing a duplex. The Director reasoned as follows:

> The phrase "in conjunction," as applied in the context of BLMC 18.22.090, conveys the notion of a primary use and a subordinate use of a property. A property developed with a duplex or multi-family dwelling units cannot have an ADU as a subordinate use. The BLMC is unambiguous in its prohibition of ADUs and duplexes on the same legal lot. The stated intent of this section of the BLMC to increase density in order to better utilize existing infrastructure, community resources, and support public transit, and neighborhood retail and commercial services is met by allowing one ADU per legal building lot as a subordinate use in conjunction with any single-family residence.

CP at 20.

The hearing examiner agreed with this interpretation. The hearing examiner cited to BLMC 18.04.010, which defines an ADU as "a second dwelling unit either in or added to an existing single-family detached dwelling, or in a separate structure on the same lot as the primary dwelling." CP at 241. When this definition is read with BLMC 18.22.090(C)(1), the two sections "clearly allow either an attached or detached ADU on a single-family residential building lot." CP at 241. This conclusion finds support in the other provisions of BLMC 18.22.090 that refer to ADUs solely in the context of single-family dwellings. BLMC 18.22.090(A)(5), (C)(5).

7

But Kanany maintains that the hearing examiner's interpretation is inconsistent with the City's land use matrix and other provisions of the BLMC that permit ADUs in the R-2 zones in which his duplexes are located. While it is true that the City's land use matrix covering all land uses in all zones within the City provides that ADUs and duplexes are permitted in the R-2 zone, the matrix contains a footnote explaining that "[n]o accessory dwelling units are allowed in conjunction with a duplex." BLMC 18.08.020.

Kanany argues that the hearing examiner's interpretation is inconsistent with former BLMC 18.16.020 (1997), which was entitled "Uses permitted outright" and allowed ADUs in the R-2 zone. CP at 94. This ordinance was in effect when he built his duplexes. CP 12. We rejected this argument in his previous appeal:

> Contrary to Kanany's argument, these two subsections are not in conflict. Rather, former BLMC 18.16.020 allows ADUs in medium density residential districts, subject to other provisions and exceptions set forth in the City's development code. BLMC 18.22.090(C)(1) is one such provision in the development code that limits ADUs. Thus, these provisions are wholly consistent.

*Kanany*, No. 42988-8-II, slip op. (unpublished portion) at 15.[2]

Kanany also argues that any reading of BLMC 18.22.090(C)(1) that would prohibit duplexes and ADUs on the same property is inconsistent with the City's comprehensive plan[3] and its stated goal of increasing affordable housing by allowing ADUs in all residential zones. We also rejected this argument in Kanany's earlier appeal:

---

[2] The decision on Kanany's earlier appeal concerned only the monetary judgment, but we addressed Kanany's additional arguments in the unpublished part of our opinion.

[3] Kanany cites a former plan, but the policy of allowing ADUs in all residential zones has remained unchanged.

Although comprehensive plan policy 3-7a states the policy of allowing ADUs in all residential zones, the plan does not suggest that ADUs must be allowed in every location and every situation in those zones. Nor does the reasonable regulation of ADUs, including their prohibition in conjunction with duplexes, jeopardize the policy of allowing them in all residential zones. That prohibition is not inconsistent with the Bonney Lake Comprehensive Plan.

*Kanany*, No. 42988-8-II, slip op. (unpublished portion) at 15. Moreover, even if there are inconsistencies, a specific zoning ordinance prevails over a comprehensive plan. *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997).

Kanany argues further that his interpretation of "in conjunction with" as prohibiting only ADUs that are attached to duplexes is consistent with the common meaning of the phrase. As support, he cites a case stating that the phrase "in conjunction with" means "conjointly." *Orange Unified Sch. Dist. v. Rancho Santiago Cmty. Coll. Dist.*, 54 Cal. App. 4th 750, 763, 62 Cal. Rptr. 2d 778 (1997). The California court also interpreted the phrase as meaning "in association, or in unison." *Orange Unified Sch.*, 54 Cal. App. 4th at 763. The City responds that the definition of "in conjunction with" refers to the co-existence of objects and supports the hearing officer's interpretation prohibiting ADUs and duplexes on the same lot. Br. of Resp'ts at 24.

Other Bonney Lake ordinances addressing ADUs reinforce the City's reading of "in conjunction with." BLMC 18.22.090 does not distinguish between attached and unattached ADUs in stating where they are permissible and where they are not. And there is no such distinction elsewhere in the code, as the definition of ADU makes clear: "[ADU] is a second dwelling unit either in or added to an existing single-family detached dwelling, or in a separate structure on the same lot as the primary dwelling." BLMC 18.04.010. Because this definition allows ADUs to be

9

separate or attached structures, it would be contrary to statutory construction to conclude that the phrase "in conjunction with" in BLMC 18.22.090(C)(1) refers only to physically attached ADUs.

Kanany's interpretation also would require the phrase "in conjunction with," used twice in BLMC 18.22.090(C)(1), to have one meaning with regard to single-family residences and another with regard to duplexes. As the hearing examiner observed,

> Accepting appellant's interpretation would render different meanings to the term "in conjunction" as used within the same ordinance section. . . . [A]ppellant's definition of "in conjunction" would have one meaning for a single-family residential lot (allowing both an attached and detached ADU) and another meaning for a duplex lot (only a detached ADU). Such is a strained and illogical interpretation and "undermines the overall statutory purpose."

CP at 243.

Kanany's reading of BLMC 18.22.090(C) (1) appears to thwart the overall intent of the code concerning ADUs, which is to prohibit their presence in lots containing duplexes. Whether viewed in isolation or in relation to other ordinances addressing ADUs, both the language and purpose of BLMC 18.22.090(C) (1) seem clear. BLMC 18.22.090(C)(1) plainly prohibits the construction of an ADU on property containing a duplex.

C.      RCW 36.70C.130(1)(a): CHALLENGE TO PROCEDURE

Kanany argues that error under RCW 36.70C.130(1)(a) occurred when the hearing officer failed to provide him with rules that would govern the hearing. As support, he cites RCW 35A.63.170, which authorizes the adoption of the hearing examiner system and provides that "[t]he legislative body shall prescribe procedures to be followed by a hearing examiner." RCW 35A.63.170(1)(c).

During the hearing, the hearing examiner explained to Kanany that there were no specific rules for the hearing and that it was being handled in the usual manner. Kanany asserts that the absence of such rules allowed the hearing examiner to proceed in an ad hoc manner that resulted in the examiner asking the City attorney leading questions and allowing that attorney to offer materials that were prejudicial, irrelevant, and immaterial. Kanany also argues that the absence of written rules meant that his objection to the denial of a continuance "fell on deaf ears"; that there were no standards for conducting prehearing procedures, including discovery, the exchange of witnesses and evidence, briefing schedules, and continuances; and that there were no standards for implementing posthearing procedures such as a request for reconsideration or an appeal. Br. of Appellant at 13.

When Brown, in assisting Kanany, inquired about the City's appeal requirements and procedures, the Director responded by citing BLMC 14.120.020 and set forth the ordinance in his email. This ordinance describes the decisions and determinations that may be appealed to the hearing examiner, how to appeal, the required contents of an appeal, the time for filing an appeal, the effect of an appeal on a City decision, the requirement that the appellant be sent notice of the date, time, and place for the hearing (including the deadline for submission of written comments), the requirement that the hearing be under oath and recorded, and it provides notification that the examiner's decision is final unless appealed to a court. At the hearing's outset, the examiner described the order in which the parties would testify, the fact that their testimony would be recorded, and the manner in which the final decision would be issued and distributed.

RCW 35A.63.170 does not require legislative bodies to prescribe procedures to be followed during the hearings themselves. It does require, however, that

11

[e]ach final decision of a hearing examiner shall be in writing and shall include findings and conclusions, based on the record, to support the decision. Such findings and conclusions shall also set forth the manner in which the decision would carry out and conform to the city's comprehensive plan and the city's development regulations.

RCW 35A.63.170(3). The hearing examiner fully complied with these requirements. His decision was in writing, included findings and conclusions based on the record, discussed the relationship of the decision to the City's comprehensive plan and development regulations, and upheld the Director's interpretation. In addition, the hearing examiner informed Kanany of the procedures to follow in seeking reconsideration or in appealing his decision.

The hearing examiner responded to Kanany's criticisms concerning the hearing's procedure in his decision denying reconsideration:

> Appellant asserts that the Examiner allowed the City to present testimony without interruption regarding his reasons for bringing the request for code interpretation, but would not allow he [sic] and his witness, Mr. Fred Brown, to discuss the City's motives for harassing him. The transcript of the proceedings speaks for itself. The Examiner did interrupt Mr. Kanany's testimony because it strayed well beyond the appeal of a BLMC code section. Much of the appellant's issues and presentation exceeded the Examiner's authority and are within the jurisdiction of the legislative process and the City Council. Even so, the Examiner allowed Mr. Kanany to provide irrelevant testimony before the interruption, and it also allowed the City the opportunity to make a short response. In addition, the Examiner admitted both Mr. Kanany's and Mr. Brown's full written statements into the record as Exhibits, and said documents are available for consideration by a reviewing court.

CP at 250. The examiner added that the City had adopted no rules of procedure for hearings before a hearing examiner.[4]

---

[4] Bonney Lake has since adopted an ordinance outlining rules of procedure with which the hearing examiner complied. BLMC 14.60.030 (Ord. 1505 § 6 (2015)).

12

The fact that Kanany's requests for a continuance and for reconsideration were denied on the merits does not demonstrate that the City and the hearing examiner inadequately informed him of the procedures involved in making those requests. Nor does the handling of Kanany's witnesses, or his inability to obtain additional witnesses, establish improper procedure. The issue before the hearing examiner was one of code interpretation, and the manner in which the examiner conducted the hearing, which followed BLMC 14.120.020, was appropriate to that issue. Additional procedures were not required under RCW 35A.63.170. Thus, the hearing examiner did not engage in improper procedure during the hearing or in reaching his decision.

D.     RCW 36.70C.130(1)(f): CONSTITUTIONAL RIGHTS

Kanany makes the related argument that the hearing examiner violated his right to due process before, during, and after the hearing. We disagree.

Procedural due process refers to the procedures that the government must follow before it deprives a person of life, liberty, or property. *Dellen Wood Prods., Inc. v. Wash. State Dep't of Labor & Indus.*, 179 Wn. App. 601, 626-27, 319 P.3d 847, *review denied*, 180 Wn.2d 1023 (2014). "'When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation.'" *Speelman v. Bellingham/Whatcom County Hous. Auths.*, 167 Wn. App. 624, 631, 273 P.3d 1035 (2012) (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006), *cert. denied*, 549 U.S. 1282 (2007)). To determine whether existing procedures are adequate to protect the interest at stake, courts consider three factors: the private interest that will be affected by the action; the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and the

Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Kanany*, 185 Wn. App. at 315.

Here, the private interest affected was Kanany's ability to use his property as desired. The City's interest was to protect public safety and property values and to prevent declining neighborhoods. *Kanany*, 185 Wn. App. at 318.

Kanany sought to protect his interest by seeking a code interpretation that would support the presence of an ADU on his property. This presented a legal issue, and the hearing procedures employed did not risk an erroneous interpretation or an erroneous deprivation of Kanany's interest. Because hearing examiner hearings are administrative in nature, due process does not require all the formal procedures or rules of evidence of a trial in court. 17 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 4.7, at 185 (2d ed. 2004); *see Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 511, 745 P.2d 858 (1987) (rules of evidence generally do not apply during administrative hearings). The procedures outlined in the existing ordinances and statutes, with which the hearing examiner fully complied, provided Kanany with notice of each opportunity for review and with the opportunity to be heard at each level of review. Given that the only issue before the hearing examiner involved a purely legal one of code interpretation, the hearing examiner did not violate Kanany's due process rights.

Kanany argues in passing that the hearing examiner's decision resulted in an unconstitutional taking of his property. This argument fails.

14

A mere regulation on the use of land does not constitute a "taking." *Robinson v. City of Seattle*, 119 Wn.2d 34, 56, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992). "In the exercise of the police power regarding property use, such as in zoning and building permit requirements, government may legitimately impose many types of restrictions or development conditions on a landowner." *Robinson*, 119 Wn.2d at 56. We reject Kanany's claims of error based on unlawful process or constitutional violations.

E.    APPELLATE ATTORNEY FEES AND COSTS

The City seeks attorney fees and costs on appeal under RCW 4.84.370, which provides that reasonable fees and costs shall be awarded to the prevailing party on appeal "of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning . . . or similar land use approval or decision." RCW 4.84.370(1).

The county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal. RCW 4.84.370(2); *see also Durland v. San Juan County*, 182 Wn.2d 55, 77, 340 P.3d 191 (2014) (under RCW 4.84.370(2), public entity will receive attorney fees if its decision is upheld in two courts). "[P]arties challenging a land use decision get one opportunity to do so free of the risk of having to pay other parties' attorney fees and costs if they are unsuccessful before the superior court." *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 413, 120 P.3d 56 (2005).

The City prevailed in the superior court and prevails here. Therefore, we grant the City's request for fees and costs on appeal subject to its compliance with RAP 18.1.

No. 46340-7-II

We affirm the hearing examiner and award the City appellate attorney fees and costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                          Lee, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.

16