142 P.3d 637 (2006)
Ralph R. MASON, Appellant,
v.
KING COUNTY, and Michael L. Parker, Sr., and Kimberly Parker, and Partel, Inc., a Washington corporation, and Michael L. Parker, Sr., President, Partel, Inc., Respondents.
No. 56341-6-I.
Court of Appeals of Washington, Division 1.
August 28, 2006.
*638 Craig Magnusson, Oles Morrison Rinker & Baker LLP, Seattle, for Appellant.
John Furse Briggs, Office of the Prosecuting Attorney, Seattle, Michael Reynolds, Auburn, for Respondents.
DWYER, J.
¶ 1 Ralph Mason appeals the trial court's dismissal of his Land Use Petition Act (LUPA) petition challenging King County's approval of Parker's[1] boundary line adjustment (BLA) application. Mason contends that the county's approval of the Parker BLA was erroneous as a matter of law because the BLA, as granted, created a substandard, undersized lot[2] pursuant to county zoning regulations and that the BLA was, therefore, not exempt from the subdivision statutes set forth in RCW 58.17.040(6). We agree. RCW 58.17.040(6) does not permit a local jurisdiction to approve a BLA application that would transform a legally created lot into a substandard, undersized lot. Accordingly, we reverse the trial court's dismissal of Mason's petition.

FACTS
¶ 2 Parker owns two adjacent lots that were legally created by a short plat recorded in 1977. Parker's property is in a portion of King County that is zoned "A-10" (Agricultural10 acre minimum lot size). Under the county code, new lots in an A-10 zone must be a minimum of 10 acres in size and residential density cannot exceed one dwelling unit per 10 acres. Parker applied for a BLA to move the boundary between his two lots, increasing one lot from 9.34 acres to 11.78 acres, and decreasing the other lot from 9.98 acres to 7.54 acres. The King County Department of Development and Environmental Services (DDES) approved Parker's BLA.
¶ 3 Parker's neighbor, Ralph Mason, appealed the approval of Parker's BLA pursuant to the LUPA. In superior court, Mason argued, as he does on appeal, that Parker's BLA was erroneously approved because the resulting 7.5 acre lot does not conform to dimensional requirements for new lots in an A-10 zone. The trial court dismissed Mason's LUPA petition with prejudice. Mason appeals.

DISCUSSION

I. Standards of Review
¶ 4 Appellate review of a land use decision is made pursuant to the LUPA. RCW 36.70C.130(1). When reviewing an administrative decision, we stand in the shoes of the superior court. Citizens to Preserve *639 Pioneer Park, L.L.C. v. City of Mercer Island, 106 Wash.App. 461, 470, 24 P.3d 1079 (2001). Thus, we limit our review to the record before the administrative tribunal. HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 483-84, 61 P.3d 1141 (2003). A court may grant relief on a land use decision only if the party seeking relief has carried the burden of establishing that one of the following standards is met:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).
¶ 5 Although Mason fails to specifically identify which of the foregoing provisions underlies his appeal, his argument involves the proper application of local and state land use regulations, i.e., an "interpretation of the law." Thus, RCW 36.70C.130(1)(b) applies.
¶ 6 We review questions of law de novo. HJS Dev., Inc., 148 Wash.2d at 468, 61 P.3d 1141. We will not reverse the land use decision of a local governmental entity unless we find that its application of law to the facts was clearly erroneous. Citizens, 106 Wash.App. at 473, 24 P.3d 1079.

III. Boundary Line Adjustments
¶ 7 We begin with a brief description of Washington state land use regulations. The Washington state legislature has enacted statutes regulating the process by which land may be subdivided. See RCW 58.17.010-920. King County has adopted regulations implementing the requirements of state law. In general, persons wishing to divide land must apply for a subdivision or short subdivision, depending on the number of lots to be created.
¶ 8 However, not all divisions of land must be accomplished through the mechanism of a subdivision. Some lots may be adjusted through the boundary line adjustment procedure. RCW 58.17.040 lists nine types of property divisions that are exempt from the subdivision regulations contained in Title 58 RCW. RCW 58.17.040(6) specifically exempts:
A division made for the purpose of alteration by adjusting the boundary lines, between platted or unplatted lots or both, which does not create any additional lot, tract, parcel, site or division nor create any lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site.
Chapter 58.17 RCW does not contain a definition of "building site."
¶ 9 The county interprets RCW 58.17.040(6) to mean that "[l]ots adjusted through the boundary line procedure are not required to comply with a local jurisdiction's minimum lot size requirements."[3] The county further contends that a local jurisdiction must approve a BLA application as long as the resulting property would not contain an additional lot or a lot that did not qualify as a "building site."
¶ 10 In so concluding, the county cites City of Seattle v. Crispin, 149 Wash.2d 896, 71 P.3d 208 (2003). In that case, the property owner, Crispin, argued that a previous division of his land that created his lot qualified as a BLA for purposes of the exemption from the subdivision statutes set forth in RCW 58.17.040(6). Crispin, 149 Wash.2d at 902, *640 71 P.3d 208. The Court ruled in favor of Crispin, finding that his lot was legally created by a BLA that was exempt from the requirements of RCW 58.17 because the property division did not create additional lots. Crispin, 149 Wash.2d at 905-06, 71 P.3d 208 (citing Island County v. Dillingham Dev. Co., 99 Wash.2d 215, 662 P.2d 32 (1983)).
¶ 11 The Crispin Court also explained that its construction of RCW 58.17.040(6) gave effect to the principle that "the regulation of land use must proceed under an express written code and not be based on ad hoc unwritten rules so vague that a person of common intelligence must guess at the law's meaning and application." Crispin, 149 Wash.2d at 905, 71 P.3d 208 (citing Burien Bark Supply v. King County, 106 Wash.2d 868, 725 P.2d 994 (1986)).
¶ 12 Crispin does not address whether a local jurisdiction may grant a BLA that would transform a legally created lot into a substandard, undersized lot. Nonetheless, the county argues that the Court in Crispin broadly held that local land use restrictions may not be applied to preclude approval of a BLA that would not create an additional lot. We disagree. Neither Crispin nor any other authority cited to us construes chapter 58.17 RCW as allowing a BLA to transform a legally created lot into a substandard, undersized lot.
¶ 13 To the contrary, Mason cogently urges that the county must look to its applicable minimum lot size requirements when determining whether a new lot following a BLA qualifies as a "building site" pursuant to RCW 58.17.040(6). Because RCW 58.17.040(6) provides only that a lot resulting from a BLA may not contain "insufficient area and dimension to meet minimum requirements for width and area for a building site," local governments are free to define the dimensions of a "building site" so long as that definition is consistent with applicable local zoning requirements.
¶ 14 Under the county code provisions in effect in 2004, when Parker applied for the BLA, KCC 19A.28.020 set forth the procedures and limitations of the BLA process. KCC 19A.28.020(C)(2) prohibits approval of a BLA that would "[r]esult in a lot that does not qualify as a building site pursuant to [KCC Title 19A]." KCC 19A.04.060(A) defines "building site" as an area of land that meets the requirements of various federal, state, and local land use regulations. Among those regulations are the locally defined "dimensional standards, minimum lot area, minimum lot area for construction, [and] minimum lot width." Of particular importance in this case is the requirement that a building site conform to the county's applicable restrictions on minimum lot area which, in an A-10 zone, requires that new lots be no smaller than 10 acres. It therefore follows that, in an A-10 zone, a proposed modified lot consisting of fewer than 10 acres does not meet the definition of a building site for the purpose of a BLA application.
¶ 15 Because the KCC provides these guidelines with respect to the county's definition of a "building site," we find unpersuasive the county's argument that it may review a BLA application only for compliance with the portion of the zoning code relating to "minimum lot area for construction," KCC. 21A.12.100.[4] By looking to its minimum requirement for a construction site in an A-10 zone, rather than the primary issue of whether a 7.5 acre lot may be created in an A-10 zone in the first place, the county would allow Parker to obviate the broader constraints of the zoning regulations. In other words, the county's approach to this case, if affirmed, might require the county to approve future BLAs, which are adjudicated without public notice, whereby land owners could avoid the formal short plat and subdivision processes otherwise required under the county code. Such a result would be contrary to the dictates of RCW 58.17.040(6), Crispin, and the requirement that land use regulations be applied in a consistent, predictable, and logical manner.
¶ 16 Accordingly, because the Parker BLA would transform a legally created lot into a *641 substandard, undersized lot, the DDES erred as a matter of law in approving Parker's application.
¶ 17 Reversed.
WE CONCUR: BAKER, DWYER and BECKER, JJ.
NOTES
[1] For clarity, we refer to the respondents collectively as "Parker."
[2] When referring to the property at issue here, we use the term "lot," as that is the term used in the applicable King County Code (KCC) provisions.
[3] Br. of Resp't King County at 5.
[4] Clerk's Papers at 34. KCC 21A.12.100(B) provides that the minimum lot area for construction in an agricultural zone is 5,000 square feet, or.12 acre, an area far smaller than Parker's post-BLA 7.5 acre lot.