# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| WILLIAM E. BUCHAN, INC., a Washington corporation, | ) ) ) ) | No. 75467-0-I |
| Appellant/Cross-Respondent, | ) ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| THE CITY OF SAMMAMISH, a Washington municipal corporation; CHESTNUT ESTATES NEIGHBORS: TOM and CHRISTIE MALCHOW, a marital community; BRENT and RHEA ASLIN, a marital community; SUNIL and MINA MISTRY, a marital community; AJAY and USHA KISHINCHANDANI, a marital community; THOMAS and GEETHA PETERSON, a marital community; VIJAY GAJJALA and DARSHINI JOIS, a marital community; JERAME and KATIE THURIK, a marital community; WALTER T. PEREYRA, an individual; and FRIENDS OF PINE LAKE, a Washington nonprofit corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED  FILED: December 26, 2017 |
| Respondents/Cross-Appellants, | ) ) ) ) | |

Cox, J. — At issue in this Land Use Petition Act ("LUPA") appeal is whether the hearing examiner's decision is either "an erroneous interpretation of the law" or a "clearly erroneous application of the law to the facts."[1] The hearing

---

[1] RCW 36.70C.130.

examiner for the City of Sammamish denied the application of William E. Buchan Inc. ("Buchan") to alter the recorded Plat of Chestnut Estates. The denial was based on provisions of the City's Development Code. The superior court reversed this part of the hearing examiner's decision and affirmed the rest. Because we conclude that the hearing examiner's denial of the application to alter the recorded Plat of Chestnut Estates was correct, we reverse the court's order to this extent. Because the remaining parts of the hearing examiner's decision are moot, we vacate the remaining parts of the superior court's order.

In 1997, Buchan and a partner proposed a subdivision on the Sammamish Plateau that was approved as Chestnut Estates ("CE"). Ebright Creek runs through a ravine along the western side of this platted subdivision. The creek is home to various anadromous salmonid species.

Adjacent to the west side of the ravine lies "Tract K," which is designated as "open space" in the recorded Plat of CE. The face of this plat further describes this open space, stating that "TRACT K IS AN OPEN SPACE TRACT AND IS HEREBY RETAINED BY WILLIAM BUCHAN HOMES INC., A WASHINGTON CORPORATION ALONG WITH ALL MAINTENACE RESPONSIBILITIES."[2] It is undisputed that Track K was so designated because of clustering of CE lots.

In 2011, Buchan met with City staff to discuss a proposed development, Chestnut Estates West ("CEW"). CEW was to be built on a broad finger ridge along the western edge of the Sammamish Plateau. Its eastern edge would drop

_____

[2] Clerk's Papers at 4640.

steeply into Ebright Creek ravine, west of CE. The area is zoned R-1, which entails certain requirements that we discuss later in this opinion.

Buchan filed a preliminary plat application for this proposed subdivision on December 9, 2011. Because the proposed CEW plat would be landlocked, Buchan proposed moving the location of Tract K of the recorded Plat of CE and enlarging the open space. Doing so would provide access over a proposed bridge to be constructed across the Ebright Creek ravine. In short, approval of the preliminary plat of CEW could not proceed without moving the location of Track K by amending the recorded Plat of CE.

City staff issued a report, recommending approval of the preliminary plat for CEW, subject to conditions. An extensive public comment period followed. Throughout the preliminary review process, interested parties, including two tribes, the Kokanee Salmon Work Group, and the state Department of Fish and Wildlife expressed concerns about potential impacts on Ebright and Pine Lake creeks, and associated wildlife there.

The staff also recommended approval, subject to conditions, of the alteration of Tract K of the CE plat.

There were various administrative appeals filed over the City's approvals. The appellants included Chestnut Estates Neighbors ("Neighbors"), Friends of Pine Lake ("Friends"), Walter T. Pereyra, and Buchan.

The hearing examiner concluded that the alteration of the recorded Plat of CE could not be approved. This was based on his conclusion that the Sammamish Municipal Code prohibited moving Tract K of the CE plat. The

3

examiner further concluded that the preliminary plat of CEW could not be approved because the alteration of the recorded Plat of CE could not be approved.

Buchan timely commenced this LUPA proceeding in superior court, asking the court to reverse the hearing examiner's denials of its two applications.

The superior court reversed the portion of the hearing examiner's decision denying the application to alter the Plat of CE to allow movement of Tract K, affirmed the remainder of the decision, and remanded for further proceedings.

Buchan appeals. Friends, Neighbors, Pereyra and the City cross appeal.

## PLAT ALTERATION OF CE

Friends, Neighbors, Pereyra, and the City argue that the hearing examiner correctly decided that alteration of the recorded Plat of CE that was intended to move Tract K of that plat could not be approved under the Sammamish Municipal Code. We agree.

We may grant relief under LUPA only if the party seeking relief establishes that one of the standards under RCW 36.70C.130(1) has been met. The standards at issue here are whether:

> . . . .
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> . . . .
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> . . . .

4

We review the land use decision itself and the administrative record underlying it, not the superior court decision.[3]

We interpret local ordinances under the same principles as we would statutes.[4] We interpret an unambiguous ordinance by its plain meaning.[5] Our task in interpreting an ordinance is to determine the legislative intent, based on "the reasonable expectation and purpose . . . of the ordinary person who sits in the municipal legislative body and enacts law for the welfare of the general public."[6] We accord deference to the hearing examiner's expertise, including in the construction of local statutes that the hearing examiner is entrusted to apply.[7]

A developer is entitled to have its application processed under the law in effect when filed.[8] Thus, we rely on the law in effect at the time Buchan filed his application.

The starting point for our analysis is RCW 58.17.215, which governs alteration of subdivisions. That state statute provides:

> When any person is interested in the alteration of any subdivision or the altering of any portion thereof, except as provided in RCW

---

[3] RCW 36.70C.130(1).

[4] Sleasman v. City of Lacey, 159 Wn.2d 639, 643, 151 P.3d 990 (2007).

[5] Milestone Homes, Inc. v. City of Bonney Lake, 145 Wn. App. 118, 126, 186 P.3d 357 (2008).

[6] Id. at 126-27 (quoting 8 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 25.71 at 224).

[7] Lanzce G. Douglass, Inc. v. City of Spokane Valley, 154 Wn. App. 408, 415, 225 P.3d 448 (2010).

[8] Erickson & Associates, Inc. v. McLerran, 123 Wn.2d 864, 867-68, 872 P.2d 1090 (1994).

58.17.040(6), that person shall submit an application to request the alteration to the legislative authority of the city, town, or county where the subdivision is located.

. . . .

The legislative body shall determine the public use and interest in the proposed alteration and *may* deny or approve the application for alteration.

. . . .[9]

Because Buchan has vested rights, its proposal to alter the CE plat must be considered under this law, which was in effect in 2011. The plain words of this state statute permit the City "to determine the public use and interest in the proposed alteration" and decide whether to approve or deny the application. This decision is permissive, as illustrated by the use of the word "may" in the statute.

Based on this authority, the City's statutes on alteration of final plats, SMC 19A.16.070(1) and (3) provide:

(1) Alterations shall be processed in accordance with RCW 58.17.215 through 58.17.218 and shall comply with the regulations in effect at the time the alteration application is submitted. . . .

. . . .

(3) The application may be approved if the proposed alteration is consistent with the required findings of SMC 20.10.200 and 20.10.220.

SMC 20.10.200 provides:

When the examiner renders a decision or recommendation, he or she *shall make and enter findings of fact and conclusions* from the record that support the decision, said findings and conclusions *shall set forth and demonstrate the manner in which the decision or recommendation is consistent with*, carries out, and helps implement applicable state laws and regulations and the

---

[9] (Emphasis added.)

6

regulations, policies, objectives, and goals of the interim comprehensive plan, *the development code*, and other official laws, policies, and objectives of the City of Sammamish, and that the recommendation or decision will not be unreasonably incompatible with or detrimental to affected properties and the general public.[10]

These provisions make clear that an application for the proposed alteration of a final plat may only be approved if the proposal is "consistent with" the hearing examiner's required findings and conclusions. Importantly, the hearing examiner must conclude whether the proposal is consistent with "the [City's] development code," Title 21A.

That development code, specifically SMC 21A.25.030(A)(13), provides:

> All subdivisions and short subdivisions in the R-1 zone shall be required to be clustered away from critical areas or the axis of designated corridors such as urban separators or the wildlife habitat network to the extent possible and *a permanent open space tract* that includes at least 50 percent of the site shall be created. *Open space tracts shall meet the provisions of SMC 21A.30.030.*[11]

SMC 21A.30.030(1), within the portion of the development code just referenced, states:

> Any *open space* resulting from lot clustering should be located where existing stands of native vegetation exist and *shall not be altered or disturbed* except *as specified on recorded documents creating the open space*. Such open spaces may be retained under ownership by the subdivider, conveyed to residents of the development, or conveyed to a third party. When access to the open space is provided, the access shall be located in a separate tract.

---

[10] (Emphasis added.)

[11] (Emphasis added.)

7

The issue is whether these provisions of the development code permit the approval of the proposed plat alteration, including the proposal to move and expand Tract K. We conclude that they do not.

It is undisputed that Tract K is designated an open space on the face of the recorded Plat of CE. Likewise, it is undisputed that this open space designation was required as a result of the clustering of lots in that plat. Significantly, nothing on the face of that recorded plat refers to any use of Tract K, either then or in the future, other than open space.

SMC 21A.25.030(A)(13) imposes two specific conditions on open space tracts. First, such tracts shall be "permanent." Second, they "shall meet the provisions of SMC 21A.30.30."

There can be no reasonable debate over the meaning of the word "permanent" when applied to Tract K. The proposal is to move and expand this open space. That is directly at odds with the plain words of this statute.

Whether the proposal complies with the provisions of SMC 21A.30.30 is the other question. We conclude that it does not.

The question is whether this "open space" would be either "altered or disturbed" by the proposal. That the open space would be "disturbed" by the proposal is beyond question. Accordingly, we believe that the hearing examiner was correct, although we reach that conclusion on different grounds than his.

We may affirm on any basis supported by the record whether or not the argument was made below.[12]

The SMC does not define the word "disturbed." So, we look to a dictionary to determine a meaning to apply under the circumstances of this case. The American Heritage Dictionary defines disturb as "[t]o break up or destroy the tranquillity [sic] or settled state of" a thing.[13] Moving Tract K would destroy its settled state as an open tract at its current size and location.

The remaining question is whether this proposed disturbance of the open space falls into the exception stated in the statute. Specifically, does anything **_"specified on [the face of the Plat of CE] creating the open space"_** permit this disturbance.[14] Plainly, nothing does. Accordingly, the Sammamish Municipal Code does not permit the alteration of the recorded Plat of CE that Buchan proposed.

Buchan makes a number of arguments why the hearing examiner's decision is incorrect. We are not persuaded by any of them.

Buchan argues that the Sammamish Municipal Code cannot restrict the broad permission of RCW 58.17.215 that authorizes alteration of plats so long as

---

[12] First Bank of Lincoln v. Tuschoff, 193 Wn. App. 413, 422, 375 P.3d 687 (2016).

[13] THE AMERICAN HERITAGE DICTIONARY 542 (3rd ed. 1992).

[14] SMC 21A.30.030(1) (emphasis added).

the alteration is in the public interest. It relies on City of Seattle v. Crispin[15] for this argument. That reliance is misplaced.

There, the supreme court held that the reconfiguration of boundaries of a tax lot did not result in any new lots.[16] Thus, the tax lot at issue in that case was exempt from municipal assessments under a state statute, regardless of boundary changes of the lot---whether minor or substantial---under city law. This ruling involved the exemption from the subdivision statutes of RCW 58.17.040(6).[17] An earlier appellate decision had held that this exemption did not apply to changes that resulted in increased development.

In Mason v. King County, this court considered and rejected the same argument that Buchan makes here.[18] There, the county argued that the supreme court in Crispin held that local land use restrictions may not be applied to preclude approval of a boundary line adjustment that was exempt from the requirements of RCW 58.17.[19] This court rejected that argument, concluding that neither that case nor any other authority cited to the court construed RCW 58.17 to require approval of a lot that failed to meet the requirements of local law.[20] That principle applies with equal force here.

---

[15] 149 Wn.2d 896, 71 P.3d 208 (2003).

[16] Id. at 904-05.

[17] Id. at 902.

[18] 134 Wn. App. 806, 811-12, 142 P.3d 637 (2006).

[19] Id.

[20] Id. at 813.

We also note that nothing in the language of RCW 58.17.215 that Buchan has called to our attention bars application of the provisions of the Sammamish Municipal Code that we previously discussed in this case. Accordingly, we assume Buchan has not found any such language.

Buchan also cites SMC 19A.16.070 and contends that it does not restrict what aspect of a recorded plat may be altered. This is true, as far as it goes. But this argument misses the point. As we have already discussed, provisions of the City's development code do restrict when and under what circumstances open space in a recorded plat may be altered. Accepting Buchan's argument would require that we turn a blind eye to the controlling provisions of the development code. We decline to do so.

Buchan next argues that the Sammamish Municipal Code distinguishes regulations that set forth procedures for plat alterations from regulations restricting what it calls "physical land alterations." And he relatedly argues that the hearing examiner mixed and matched these distinct regulations to reach his decision. These arguments too are unpersuasive.

Buchan bases its argument on the definition of "alteration" in SMC 21A.15.056. It uses this definition to challenge the reading of SMC 21A.30.030(1) of the development code to bar movement of Tract K, open space in the recorded Plat of CE. We need not decide whether this statute bars movement of designated open space on the basis that it constitutes an "alteration" under the SMC. That is because it plainly is a "disturbance" as that word is commonly understood.

11

Buchan also argues that affirmance of the hearing examiner's denial of the alteration to the recorded Plat of CE "would prohibit a city or hearing examiner from approving a plat alteration which would unquestionably enhance open space . . . without any consideration whether the proposed 'alteration' results in a net benefit to the public health, safety, and welfare."[21] We are not persuaded by this argument.

It fails to deal with the plain words of the statutes we discussed earlier in this opinion. These statutes bar the request to move Tract K.

In any event, the City's choice to require the permanent dedication of open space, subject to the restrictive conditions imposed here, is not illogical. That the City chose to protect open space under these rigorous conditions based on the underlying rationale for designation of Tract K is well within proper legislative judgments that the City was entitled to make.

In sum, we conclude that the hearing examiner neither erroneously interpreted the law nor clearly and erroneously applied the law to the facts.[22]

## PRELIMINARY PLAT APPROVAL OF CEW

A question remains whether the preliminary plat of CEW should have been approved. The hearing examiner decided that it could not be approved because of the denial of the plat alteration of CE. We agree.

---

[21] Clerk's Papers at 6507.

[22] RCW 36.70C.130.

The briefing of the parties does not seriously dispute that approval of the preliminary plat is necessarily dependent on the plat alteration of CE. Accordingly, there is no need for us to discuss this further.

## MOOT QUESTIONS

In his decision, the hearing examiner correctly decided that the CEW preliminary plat could not be approved because the CE plat could not be altered to move Tract K and that the remaining issues were moot.[23] Nevertheless, he chose to address many further issues about the proposed plat.

On LUPA review, the superior court affirmed this portion of the hearing examiner's decision and remanded the matter.

Because the issues other than those we have decided in this opinion are moot, we decline to reach them. Accordingly, we vacate that portion of the superior court's order affirming the hearing examiner's decision in this respect.

We reverse the Order on Appeal of Land Use Petition to the extent that it reverses the hearing examiner's denial of the alteration of the recorded Plat of Chestnut Estates. We vacate, as moot, the remaining part of the superior court's order.

_Cox, J._

WE CONCUR:

_Trickey, A.C.J._          _Dwyer, J._

---

[23] Decision at 34.

13